BROWN AND WIFE *vs.* COBB ET AL.

APPEAL FROM THE COURT OF PROBATES FOR THE PARISH OF
EAST FELICIANA.

Where it is shown that a slave was purchased with the funds of the wife,
and the title is taken in the name of the husband, the slave will become
community property, but the price will become a legal charge against the
community in favor of the wife.

Where the deed of sale of certain slaves to the husband, during marriage,
purports to be a simple absolute sale on its face, the slaves will be consi-
dered as community property.

Parole evidence is inadmissible to show that an act of sale was different
from what it purports to be on its face, as far as relates to title; although
it might be legal and proper in a claim against the community of acquests
and gains, to show that the price of the article was paid out of the sepa-
rate funds of the husband.

This suit was instituted in the Court of Probates for
the parish of East Feliciana, by the plaintiff, Brown, as
administrator, and Charlotte Brown, his wife, as heir of
the estate of Samuel Cobb, deceased, praying for authority
to sell the whole property of the community existing
between the deceased and his wife, Josephine Cobb, to
enable them to settle and pay off the community debts,
and make a partition of the remainder among the survi-
ving widow and heirs of the deceased husband; and that
the separate property of the widow and of the husband,
be delivered to her and to his heirs respectively, &c. And
further, to correct some mistakes in the inventory in rela-
tion to two slaves, Louisa and Henry, inventoried as the
separate property of the deceased, whereas they should
have been placed on the same as community property.
They pray that the other heirs be cited and made parties
to this proceeding.

The defendants deny the right of the administrator to institute an action of partition, or even an heir, until acceptance of the succession, and not then, if accepted with benefit of inventory; that the administrator and heir cannot be joined in the same suit; and further, that as regards the sale of the property to pay debts, this proceeding is illegal and oppressive to the survivor of the community, &c.

On the merits the defendants pleaded a general denial; and the defendant, Mrs. Cobb, expressly declares that all the property mentioned in the inventory belongs to the community, except the slaves Noah and Ben, which belong exclusively to her late husband's estate; and that Simon and François, are her separate property, which she prays may be confirmed to her by final judgment; and that she have judgment against the administrator for the sum of eight hundred dollars, as the price of a negro woman named Lucy, who was her separate property, and sold by her husband during the marriage, who received the price thereof.

At this stage of the proceedings, Charlotte Brown, wife of the plaintiff and administrator, presented her separate petition, alleging that she was sole heir of Samuel Cobb, deceased, having purchased out the other heir, Charlotte Breed, and prays for a partition with the widow in community, in conformity with the prayer of the original petition.

Upon these pleadings and issues the cause was tried before the judge of probates, on the evidence produced by the respective parties.

The opinion and decree of the probate judge embraces a full statement of the facts and evidence of the case, and is inserted below as a report of this part of it.

"This is a suit between the heirs and widow of the late Samuel Cobb, for a partition between them of the community of acquests and gains that existed between the deceased and his widow. Claims are set up, both by the widow and heirs, to property found in the succession as not appertaining to the

Eastern Dist. community, but as being the separate property of the one
June, 1836. and the paraphernal property of the other. The settlement
Brown & Wife of these demands is now the only object of this contest. It
vs. is agreed, that the parties shall have the right hereafter
Cobb et al. respectively to bring forward their claims, if they have any
against the community.

"The slaves Rhoda, and her children, Lewis and Amanda,
are claimed by the heirs of Cobb as his separate property,
and the slaves François and Simon, are claimed by Mrs.
Cobb as her paraphernal property. It is clear that all these
slaves were acquired during the marriage, and that, conse-
quently, they form *primâ facie*, part of the community of
acquests and gains.

"The question now arises, has any thing been shown on
the trial that brings these slaves, or either of them, within
any known exception to the general rule.

"It appears that Rhoda and her children were sold at
auction, on a credit of twelve months, and that they were
bid off by Samuel Cobb, and were then transferred to him by
A. Breed and wife, by notarial act. Evidence was offered
by the plaintiffs to show, that the price of Rhoda and her
children was paid by Cobb with property or debts which
belonged to him before his marriage, and that they are con-
sequently his separate property, and do not enter into the
community of acquests and gains.

"The conclusion is an erroneous one. By the Louisiana
Code, article 2371, all property acquired during the marriage
by *purchase*, forms part of the community. Now, if the hus-
band acquires property by *purchase*, it is altogether unimpor-
tant by what means he pays for it. If the payment of the
purchase money be made out of funds he had before his
marriage, it may be that it would constitute a claim against
the community, but that circumstance does not affect the
rights of the wife otherwise. It appears from the *proces
verbal* of the auction sale, that Cobb had some interest in the
property sold, and that the sale was made at the written
request of A. Breed, C. Breed, and Samuel Cobb, stating

that they were owners of the property to be sold.   On this it
is contended, that the sale was a *licitation* for the purpose of
effecting a partition among co-proprietors.
"The evidence is altogether insufficient to establish the
fact, that the Breeds and Cobb were co-proprietors of the
slaves in question.   They may well have stated, as they did
do, in their request to the auctioneer, that the property *to be
sold* was theirs, and yet Cobb might have no interest in the
slaves.   The price of the slaves did not amount to one third
of the whole amount of property adjudicated.   The auc-
tioneer in the *proces verbal*, limits the right of Cobb by the
use of these words, "*and in which Samuel Cobb is somewhat
interested*," and, finally, a transfer by notarial act is made by
Breed and wife, and accepted by Cobb, in which he stipulates
to pay the price bid by him, and on the terms of the auction
sale.   If Cobb had been a co-proprietor, is it reasonable to
suppose that he would have consented that the auctioneer
should have used the terms he did use touching the extent
of his right?   Would he have accepted a deed from his
co-proprietors in which no allusion is made to his co-proprie-
torship?

"But, if it were conceded that they were co-proprietors of
the slaves, it does not appear that they were put up at
auction for the purpose of effecting a partition.   The whole
proceeding shows an intention to *sell* on the one part, and to
*buy* on the other.   It has all the requisites and appearances
of a sale, and bears no semblance of an act of partition.   By
the French law, co-proprietors cannot sell to one another;
consequently, a sale at auction by co-proprietors under that
law, can have no other meaning or effect but a licitation for
the purpose of a partition.   Our Code has no such senseless
provision, but, on the contrary, recognizes in express terms
the right of an heir to sell to his co-heir, or to any other
person.   If co-heirs intend to sell for the purpose of making
partition of an estate, the intention must appear on the face
of the proceeding; at any rate, the appearances must not
contradict such intention if they wish to give it effect.

"The slave François, was purchased by Cobb at the probate sale of Etienne Seschon. Nothing but presumptions, and those exceedingly slim, have been offered to show that he does not belong to the community of acquests and gains.

"The slave Simon, presents rather a new question. He was purchased by Cobb from Wilson Maddox, on the 23d day of January, 1834, for the sum of $550, and on the same day a credit is entered on a judgment recovered by Mrs. Cobb against the estate of her deceased father, by Stacy, her attorney, in the following words : 'Received of the within bond, the sum of five hundred and fifty dollars,' by the slave Simon, purchased at that price by the plaintiffs, of Wilson Maddox, January 23d, 1834. Signed, D. S. Stacy, attorney for Josephine Seschon, and S. Cobb.' It is evident that Cobb acquired the title of Simon by purchase. It is also certain, that he paid the price out of the paraphernal property of his wife.

"If the deed from Maddox to Cobb, had expressed the consideration to have been paid out of the paraphernal property of Mrs. Cobb, the slave would have become her paraphernal property. *Savenat et al.* vs. *Lebreton et al.*, 1 *Louisiana Reports*, 520. But the deed does not express this fact. Has not the husband a right to use the money of his wife to pay for his purchases ? And does the fact of his doing so bring the property purchased by him under any exception to the general rule, that all the property acquired during the marriage by *purchase*, is community property ? I think not; and therefore decide, that the slave Simon forms part of the community of acquests and gains.

"The slaves Ben and Noah, are admitted to have been the property of Cobb before his marriage. It is, therefore, ordered, adjudged and decreed, that they be delivered to the plaintiffs.

"It is further ordered, adjudged and decreed, that the crop growing upon the plantation, and all the property mentioned in the inventory, be partitioned between the widow and heirs of Samuel Cobb, a moiety to the widow, and the other

# OF THE STATE OF LOUISIANA.

moiety to the heirs, and that experts be appointed to inquire and report whether the same be devisable in kind.

" It is further decreed, that the costs of this suit be paid out of the property, to be divided one half by each of the parties."

From the decree thus rendered, the plaintiff, Charlotte Brown, appealed.

*Lawson,* for the plaintiff.

1. The appointment of administrator was by a decree of the Probate Court, and cannot be inquired into collaterally, but must be attacked by the direct action of nullity, and especially when the party who attempts it has brought an action to set it aside, and judgment was rendered against him which stands unreversed, which is the case here. 2 *Louisiana Reports,* 244, 590. 11 *Martin,* 608.

2. Owners of undivided parts of an estate have at all times the right of requiring a partition ; and an administrator is appointed to act *only* till partition is made. *Louisiana Code, articles* 1040, 1215. 6 *Louisiana Reports,* 472.

3. Each spouse, or his legal representatives, have the right to be put into possession of their separate property immediately upon the dissolution of the conjugal community, and before the settlement of its affairs. *Robin et al.* vs. *Castile,* 7 *Louisiana Reports,* 294.

4. The court *a quo* was right in refusing to suffer the defendant to prove by parole the agency of S. Cobb in the purchase of the slaves Simon and Françoise, in contradiction to the deed of sale of Wilson Maddox to S. Cobb, and the *proces verbal* of the adjudication of Françoise. 3 *Louisiana Reports,* 460.

5. The court *a quo* correctly decided, that the slave Simon was community property, and therefore the judgment of the Court of Iberville was improperly received as evidence of title to the slave Simon. It contradicts the pleadings, and is but a part of an incomplete and imperfect record. 8 *Martin,* *N. S.,* 382.

23

6. The twelve months' bond, with the annexed receipt, was improperly admitted in evidence by the court *a quo* to' show title to the slave Simon :

1st. Because it was only a part of an incomplete record.

2d. Because it contradicts the deed of Wilson Maddox to S. Cobb, who was acting as the head of the community.

3d. Because no authority to D. S. Stacy was shown, to accept the transfer of a slave and enter satisfaction in the judgment.

4th. Because, if S. Cobb authorized the attorney to credit the judgment with the price of Simon, this amount will only form a charge against the community. *Dismuke et al.* vs. *Musgrove,* 8 *Martin, N. S.,* 382.

7. The slave François is community property. He was adjudged to S. Cobb at the probate sale of Mrs. Maddox, and he gave his notes, with security, for the payment of the price. These notes are outstanding and unpaid.

8. The slave Rhoda and her children are clearly separate property.

1st. It is admitted that these slaves were adjudicated to S. Cobb after his marriage / with defendant, but they were acquired by licitation to effect a partition among co-proprietors by indivision, of whom S. Cobb was one. *Louisiana Code, articles* 1261, 1304. 11 *Martin,* 81.

2d. The title of co-proprietors by succession, remounts to the death of their common ancestor, and, as the part of each is undetermined until partition, the right of each extends to the universality of the goods, and to each part, *totum in toto, et totum in qualibet parte.* *Louisiana Code, articles* 934, 943, 1031, 1046. *Ibid.,* 1420, 1214.

3d. A joint heir, or other joint proprietor, does not acquire a new property by partition or licitation : these modes of division but determine the extent of the rights of each joint owner : the heir, or other co-proprietor, is supposed to have been from the moment of the decease of the common author, or of the joint ownership proprietor of the property composing his lot, or adjudged by licitation. There is no change of title. The property which the heir receives, or is licitated to

the co-proprietor, descends under the title of succession, or is continued from that of joint ownership. The title is but completed and perfected by the designation of specific property. Property thus owned does not enter into the conjugal community. *Napoleon Code, article* 1408. *Louisiana Code,* 1420, 1214. 12 *Toullier, number* 155. 1 *Louisiana Reports,* 520. 3 *Ibid.,* 231.

4th. No change can be made during the marriage in the matrimonial agreement or conjugal community, expressly or impliedly, contracted. During its existence, debts contracted enter into the partnership as a charge, and must be acquitted from the community fund. From which it follows, that the spouses cannot during the marriage, by contravening the prohibitory provisions of the Code, (article 2307,) either enrich the community at the expense of their property and personal goods, nor enrich themselves by augmenting their personal fortune at the expense of the community.

If the community furnished any part of the price of these slaves, recompense is due by the spouse benefitted. *Louisiana Code,* 2309, 2372. *Napoleon Code,* 1469, 1470–73, 1436–7. 12 *Toullier, numbers* 343–44.

5th. These principles are in conformity to the universal principles of all partnerships. Whatever the partners bring into the partnership forms a part of it; and whatever the partners individually and from their separate funds may have disbursed or become liable to pay for the partnership, it is bound to reimburse to them. *Louisiana Code,* 2824, 2835.

The court *a qua* should have permitted the plaintiffs to have shown how the slaves Rhoda and her children were paid for, it being alleged that they are separate property.

The *proces verbal* of the licitation, and the deed following it, established the adjudication.

Payment of the price of real estate may be proven by parole.

Parole testimony is admissible, in contradiction to a written instrument to prove facts which are merely inductive to the main facts which are required to be proved. 7 *Louisiana Reports,* 156. 4 *Martin, N. S.,* 212. 6 *Louisiana Reports,* 258, 606.

EASTERN DIST.
June, 1836.

BROWN & WIFE
vs.
COBB ET AL.

*Andrews*, for defendants.

1. All property purchased during marriage is community, provided it be by a real sale and purchase.   *Louisiana Code*, 2371, 2374.

2. Sale of the property from Breed to Cobb is a real sale ; the nature of which cannot be contradicted by parole testimony, or by presumptions.

3. No joint ownership of said property was shown previous to said sale.

4. A sale for the purpose of partition is a real sale, which originates a new title, but does not continue an old one. *Totum in toto, et totum in qualibet partè*, is no maxim of our law.   *Louisiana Code*, 1420.

5. Property taken in payment of a paraphernal credit of the wife is not a sale, but a *dation en payement*.   Character of a contract does not depend on its name, but on its nature and essence.   *Peet* vs. *Morgan*, 6 *Martin*, *N. S.*, 583.   *Bynum* vs. *Armstrong*, 5 *Martin*, *N. S.*, 161.

6. If the husband receives property in this manner, the presumption arises that he did so as the administrator of his wife's paraphernal effects.   This presumption can be strengthened by additional proof, such as is herein given.

*Mathews, J.*, delivered the opinion of the court.

This suit, after having passed through the ordeal of many exceptions, taken in *limine litis*, finally settled down in a contest touching the partition of the community property acquired during the marriage of the defendant with Samuel Cobb.   The plaintiff, Mrs. Brown, demands a division between herself (as having succeeded to the interests of the deceased husband,) and the defendant, widow, in community. As to the claim for a partition of the community of acquests and gains, it is not disputed.   But questions were made by the pleadings arising out of the different pretensions of the parties by which each claimed as their separate property certain slaves which had been inventoried as common.   The court below decided against the claims of both parties.   The judgment thus rendered having a tendency to affect the

interest of the plaintiffs in a greater degree than that of the defendant, the former appealed.

As to the slaves claimed by the defendant, viz. : Simon and François, her pretensions need not be here examined, as she did not appeal, and it is acknowledged by her counsel, in his brief of argument, that the decision of the court below is correct, decreeing them to be property of the community; but as Simon was purchased with funds belonging to the wife, although the title was taken in the name of the husband, the price given will constitute a legal charge against the community.

In relation to the slaves Rhoda and her children, claimed as the separate property of Mrs. Brown; the evidence of title produced, shows that they were purchased by the husband during the marriage. A document was adduced indicating that the purchaser had some interest in the property which was sold at auction, amongst other effects. The amount and value of his interest are not shown by the written document, and the deed of sale for the slaves in question, exhibits a purchase without reference to any right of property previously existing in the purchaser. We are, therefore, of opinion, that the court below did not err in considering the deed as evidence of a simple sale, by which the purchaser acquired property pending the marriage, and not a licitation of effects held in common by him and other persons. Parole evidence was offered to show that the act of sale was different from what it appears on its face. This evidence, we think, was properly rejected, as it relates to the question of title, although it might and probably would be proper in a claim against the community of acquests and gains, in favor of the plaintiffs, to show that the price was paid out of the separate funds of the husband.

The articles of the Louisiana Code, relied on by the defendant, are explicit, and demonstrate clearly that the slaves Rhoda and her children constitute a part of the matrimonial community as it existed at the death of the husband. *Louisiana Code, articles* 2314, 2371.

*Margin notes:*

EASTERN DIST.
June, 1836.

BROWN & WIFE
*vs.*
COBB ET AL.

Where it is shown that a slave was purchased with the funds of the wife, and the title is taken in the name of the husband, the slave will become community property, but the price will become a legal charge against the community, in favor of the wife.

Where the deed of sale of certain slaves to the husband, during marriage, purports to be a simple absolute sale, on its face, the slaves will be considered as community property.

Parole evidence is inadmissible, to show that an act of sale was different from what it purports to be on its face, as far as relates to title, although it might be legal and proper, in a claim against the community of acquests and gains, to show that the price of the article was paid out of the separate funds of the husband.

EASTERN DIST.    It is, therefore, ordered, adjudged and decreed, that the
June, 1836.    judgment of the court below be affirmed, the costs to be paid
BROWN & WIFE   out of the community property, reserving to the respective
vs.
COBB ET AL.    parties to this suit their right to prove the amount paid out
of the separate funds for the property now in dispute, as a
charge on the community, &c.