## BROUSSARD *VS.* BERNARD ET ALS.

APPEAL FROM THE COURT OF THE FIFTH JUDICIAL DISTRICT, THE JUDGE OF THE SEVENTH PRESIDING.

Evidence consisting of extracts from the *procès verbal*, of commandants and parish judges in Attakapas, for a long series of years, in which the phrase "*afin de faire cesser la communauté*" is used in the caption to inventories, with other phrases of similar import, *is insufficient* to prove the existence of a *custom in such place*, that a community of acquests and gains continued between the surviving husband and the heirs of his deceased wife, until inventory is made.

When there is no evidence to satisfy the court, that any succession has been settled and partaken, in conformity with an alleged or supposed *custom* of a place, recognising the continuance of the community after the marriage is dissolved, *until inventory is taken;* and nothing like a course of judicial acts recognising such a custom is shown, it will not be considered as proved to exist.

A community of acquests and gains as such, ceases to exist at the moment of the death of one of the partners, with all the legal effects resulting from it. Each party is seized of one undivided half of the property composing the mass; and the surviving party cannot alienate the share not belonging to him.

If the survivor of a community of acquests and gains, continues to administer it without provoking a partition and is tacitly permitted to enjoy the common estate, he will be considered, except in cases where he may have a legal usufruct, as intermeddling, and his responsibilities will be those of a *negotiorum gestor.*

A judgment rendered by a court of competent jurisdiction, between parties legally before it, cannot be questioned indirectly and collaterally.

Minors are bound by the judgments of courts of competent jurisdiction, when they come before them properly represented, in the same manner as other persons.

The *Fuero Real* was not in force in Louisiana in 1816.

While a judgment remains in force and unappealed from, the rights of the parties are concluded by it, leaving to those under age their legal recourse.

Property purchased by the husband after the dissolution of the community by the death of his wife, becomes his *sole* property; but he is accountable for one-half of the net revenues derived from the common property after the death of his wife, and up to the time of making the inventory.

This case was remanded for a new trial at the September term of this court, held at Opelousas, in 1827. See *preceding case, ante* 211.

On its return to the District Court the defendants were permitted to prove by the records of the parish judge's office, that according to the customs of the county of Attakapas, a community of property continued after the death of one of the partners between the survivor and the heirs of the deceased partner until an inventory is made.

28

WESTERN DIST. September, 1834.

BROUSSARD
vs.
BERNARD ET ALS.

The district judge decided "that the defendants having proved that the *Fuero Real* of Spain was in force in this state at the time of the death of the wife of the plaintiff, in 1816, that the community of goods and property and acquests and gains which formerly existed between the parties, *continued* after the death of the wife, to the 15th November, 1820, the time of making the inventory." He then went on to annul the decree rendered in the first suit, which directed an estimation and deduction of all the debts paid by the husband, from the community property, after the death of the wife, and before taking the inventory, before a partition of the community was to be made. Judgment was then rendered in favor of the defendants for one-half of the community as estimated in the inventory taken in 1820, or for half the sum of eleven thousand nine hundred and forty two dollars, to be satisfied out of the property of the community that existed in the possession of the husband at the death of his wife. From this judgment the plaintiff appealed.

*Brownson* for the plaintiff contended, that the decree rendered between these parties must be enforced, as nearly all of the heirs of Madame Broussard were majors and married women at the time it was rendered by consent.

2. It will also appear from the estimate of the community, as it existed at the wife's death, and the amount of debts since paid on its account, that there was not, and is *not now* in fact any property or portion of the community, which the heirs can claim.

3. But suppose there should be found any estate to be divided between these claimants, and supposing that the former judgment should be found injurious to the present defendants, I contend that this court can only make restitution to the minors, and not to the majors and married women, who were legally represented at the rendering of the decree.

4. Minors it is admitted are privileged to demand restitution, even against a judgment under the Spanish law, but they must show that they have been injured. *Partida* 6, tit. 19, *law* 2.

WESTERN DIST.
September, 1834.

BROUSSARD
vs.
BERNARD ET ALS.

5. But can the restitution in favor of the minors, benefit the majors? Their interests are not indivisible. The law itself divides their interests, so that each is entitled to his virile portion of the property, &c.

6. It is argued that the community of acquests and gains, continued after the dissolution of the marriage, until the taking of the inventory. If so, then all the property of which it was composed, was included in the inventory. On the subject of the continuàtion of the community, after the death of one of the parties, the court is referred to *Febrero, part 2, lib. 1, chap. 4, § 4, from No. 86 to 96.*

7. The plaintiff denies the existence of the *Fuero Real* of Spain in Louisiana, or any such customs in the county of Attakapas, as those contended for by the defendants' counsel.

*Simon* for the defendants.

1. This suit is brought to carry into effect a certain judgment of the District Court, unappealed from, which judgment was rendered by consent between the parties. That consent I contend, was given in error. Three of the plaintiffs in that suit, and who are defendants in this, were minors at the time the judgment was rendered. Judgment in the present case, was rendered in favor of the defendants generally, and the plaintiff appealed.

2. The defendants plead restitution against the first judgment, which plea should have effect, at least in favor of the minors. Judgment by consent, under such circumstances, cannot stand. *Partidas, Moreau and Carlton edition, vol. 1, p. 317, laws 1, 2, 3. Vol. 2, p. 1153, law 3.*

3. The injury resulted in this case, in not setting up the proper defence for the heirs, and in letting judgment go against the legal rights of the parties. We now take the ground that the community *continued to exist between* the surviving husband and the heirs of his wife, until the making of the inventory; that all the fruits arising from the property, since the death of the wife, up to the time of the inventory, belong to the community, and ought to have been accounted for by the husband, to the community. If this position be

true, its effect was disregarded at the rendition of the judgment, which considered the community dissolved by the death of the wife. In this respect, the judgment, as far as regards the minors, is not binding. They at least are entitled to restitution.

4. The community continues between the surviving partners, and the heirs of the deceased one, until an inventory is made. 4 *Febrero ad. book* 1, *chap.* 4, § 4, *Nos.* 86, 87 *and* 88, *p.* 261. *Ibid, vol.* 3, *chap.* 9, § 1, *No.* 12, *p.* 181.

5. According to the custom of Orleans, if no inventory is made, the community continues with the collateral heirs. *Pothier's Communauté, vol.* 2, *p.* 229, § 792, 793, *p.* 260, *No.* 808. 3 *Martin,* 120.

6. In this case it is proven, that it was always customary in the county of Attakapas, to make settlements of the community on the basis of its continuance, up to the time of taking the inventory. The acts and records from the parish judge's office in St. Martin, embracing a long series of dates, and which are in evidence, show the existence of this custom; and that the *Fuero Real* of Spain existed, and was in force in Attakapas, at the time of the death of plaintiff's wife.

7. All the profits that have been made by the plaintiff, since the death of his wife, up to making the inventory, and with which profits he has paid the debts of the community, ought to have been partaken between the parties; that is, the plaintiff should not be allowed any credit for the payment of those debts, which were extinguished by said profits.

8. The District Court has rendered a judgment in favor of the defendants, for their half of the inventory, without allowing any credit for the debts paid with the profits. We contend, that all the defendants are entitled to that half, and at all events, that the three minors are entitled to their portion, which would be a fourth of the amount of the inventory.

9. In relation to the married women, who were interested in the first suit, and among the defendants in this; and whose husbands in that consented to the judgment, I contend that the judgment is not binding on them, and that they with the minors, are entitled to restitution.

*Brownson* in reply, denied that there was any evidence of any debts having been paid by the fruits and profits of the late community.

2. The debts were chiefly paid by contracting new debts on the part of the plaintiff. If evidence to this point had been taken, it would have shown that the plaintiff, during the pendency of this suit, had failed in consequence of them.

*Bullard J.*, delivered the opinion of the court.

This case was before the court, at a former term; the judgment first rendered, was reversed, and the case remanded, in order to enable the parties, to exhibit certain evidence, of the existence of a custom. On the new trial, written evidence was produced, consisting of documents from the archives of the parish of St. Martin, some of ancient and some of recent date, which satisfied the judge *a quo*, that the custom, of considering the community as continuing, after the death of one of the parties, until an inventory was made, was in existence in Attakapas, and that the *Fuero Real* was in force there, at the death of Madame Broussard, as late as the year 1816.

This court held, at that time, that the particular custom relied on, could only be proved by other partitions and divisions, which may have been made in the same place, and that it prevailed without interruption, upon the authority of *Febrero, p. 2, lib. 1, chap. 4, § 4, No. 91. and 3 Martin, 120.*

The evidence offered on the trial, and which is annexed to the record, consists of numerous inventories or extracts, from *procés verbaux*, by several successive commandants, on proceeding to take inventories, in which they make use of such expressions as the following: that they had proceeded to make an inventory with appraisement, &c. "*afin de faire cesser la communauté,*" &c., or of similar import. There is no evidence to satisfy us, that any succession has been settled and partaken, in conformity with such supposed custom. Nothing like a course of judicial acts, recognising such a custom, is shown. The expressions embodied in the various inventories before us, amount to nothing more, in our opinion,

*Evidence consisting of extracts from the procés verbal, of commandants and parish judges in Attakapas for a long series of years, in which the phrase "a fin de faire cesser la communauté" is used in the caption to inventories, with other phrases of similar import, is insufficient to prove the existence of a custom in such place, that a community of acquests and gains continued between the surviving husband and the heirs of his deceased wife, until inventory is made. When there is no evidence to satisfy the court that any succession has been settled and partaken in conformity with an alleged or supposed custom of a place, recognising the continuance of the community after the marriage is dissolved, until inventory is taken; and nothing*

like a course of judicial acts recognising such a custom is shown, it will not be considered as proved to exist.

A community of acquests and gains, as such, ceases to exist at the moment of the death of one of the partners, with all the legal effects resulting from it. Each party is seized of one undivided half of the property composing the mass; and the surviving party cannot alienate the share not belonging to him.

If the survivor of a community of acquests and gains, continues to administer it without provoking a partition, and is tacitly permitted to enjoy the common estate, he will be considered, except in cases where he may have a legal usufruct, as intermeddling, and his responsibilities will be those of a *negotiorum gestor.*

than the usual style of notaries, which add nothing to the force and effect of the act. An inventory without such enunciation of the purpose for which it was made, would not be less an inventory.

That a community of acquests and gains, as such, continues after the death of one of the partners, with all the legal effects resulting from such a relation, with authority in the husband, if he should survive, to be still regarded as the head of the community, with power to bind the common property by new contracts, and to alienate it without restraint, is a proposition so repugnant to all our notions of a community, and so subversive of first principles, that it cannot be for a moment admitted. On the death of one of the spouses, the community, in a legal sense of the word, is unquestionably terminated. Each party is seized of one undivided half of the property, composing the mass, and the surviving party cannot validly alienate the share, not belonging to him. If the survivor continues to administer, without making a partition, and is tacitly permitted to enjoy the common estate, he will be considered, except in cases where he may have a legal usufruct, as intermeddling, and his responsibilities will be those of a *negotiorum gestor.*

The object of the present suit, is to compel the defendants, to come to a final liquidation and settlement of the community, formerly existing between Michel Broussard and his late wife, according to a decree, rendered by consent of all parties concerned, in 1820. The defendants in this case, who were plaintiffs in the first suit, seek to avoid the effect of that judgment, on the allegation, that it was rendered by consent, that some of them were minors at the time, and some married women, and that they were injured by said judgment, and are entitled now to restitution.

The action upon which the judgment was rendered, in 1820, was prosecuted by the present defendants, against Michel Broussard, and other persons, to whom he had conveyed, during the life-time of his wife, certain property, belonging to the existing community of acquests and gains. The principal object of that suit appears to have been, to

annul that alienation, as made in fraud of his wife. The purchasers, who were parties, pleaded among other things, that the right of action was prescribed; that a year had elapsed since the sale, and that in cases of alleged fraud, the revocatory action could not be maintained, after the expiration of one year. The judgment was finally entered by consent, annulling the alienation, restoring the property to the community, and permitting the surviving husband to retain it as his own, on certain conditions.

If we take the whole judgment together, it is not easy to comprehend, how the present defendants have been aggrieved by it. Without that judgment, the whole property would yet belong to Isidore Broussard, or Landry, to whom it was conveyed, before the death of Madame Broussard. It is said, that the consent of the husband, and of the tutors, amounted to an alienation of the property of the wife and minors. But it must not be overlooked, at the same time, that the same consent tended to acquire the same property, which without it, may have been irrevocably lost to them.

The decree rendered in the present case, sustains to a certain extent, the exception of the defendants, and proceeds to set aside the first judgment, as founded in error of law, and prejudicial to the minors and married women, and condemns the plaintiff to pay about six thousand dollars, the estimated value of the property in the inventory.

It has been contended by the counsel for the appellant, that the first decree rendered by consent, if objectionable, was not absolutely null, but merely erroneous, and can only be avoided by action of nullity, or by appeal.

This court has held, that a judgment rendered by a court of competent jurisdiction, between parties legally before it, cannot be questioned indirectly and collatarally, and in a recent case, that minors properly represented, are equally bound; and the same doctrine was recognised in the case of *Martin* vs. *Martin's heirs.*    5 *Martin, N. S.* 165.

We are therefore of opinion, that the court erred, in declaring that the *Fuero Real* was in force in Louisiana, at

A judgment rendered by a court of competent jurisdiction between parties legally before it, cannot be questioned indirectly and collaterally.

Minors are bound by the judgments of courts of competent jurisdiction, when they come before them properly represented, in the same manner as other persons.

The *Fuero Real* was not in force in Louisiana in 1816.

WESTERN DIST. the death of Madame Broussard, and in setting aside the
September, 1834. judgment heretofore rendered, and yet remaining unreversed.
While that judgment remains in full force, it ought to regu-
late the rights of their parties in the premises, leaving to
those who were not of age at the time, their legal recourse.

Before any final settlement of the community can be made,
it is necessary to examine the substance and extent of that
decree. It begins by declaring, that the property which had
been sold by Broussard to Isidore Broussard, and by the latter
to Landry, belonged in full right and *bonâ fide*, to the parties
jointly, the same, together with its natural fruits and increase,
being a community between said Michel and the heirs and
representatives of his wife. It then proceeds to decree, that
all the property mentioned in the deeds, shall be partaken
and divided between the parties, the heirs taking their share
in money, at certain times of credit, and the defendant
retaining the property, at an appraisement to be made after-
wards; and the sums coming to the heirs, being one-half
of that estimation, after deducting the amount of debts due
by the community, and which the defendant may have paid,
after the death of his wife. It is silent as to the revenues
derived from the property, from January 25th, 1816, up to the
time of the inventory.

It is contended by the defendants, in their answer, that the
property acquired by the plaintiff, after the death of his wife,
belongs to the community. We are of opinion, that it forms
the sole property of the plaintiff, but that he is accountable for
one-half the net revenues, derived from the common property,
after the death of his wife, and up to the time the inven-
tory was made, in November, 1820. At that period, we
consider his obligation to account for the revenues, to have
ceased, because he was authorised to consider the whole
property as his own, on paying interest, according to the
judgment.

According to this view of the rights of the parties, under
the existing judgment, we are of opinion, that the final
settlement and liquidation of the community, ought to be
effected as follows: first, all the property mentioned in the

inventory, in the possession of the plaintiff, at the price
therein estimated ; second, crediting the plaintiff for all debts
contracted before the death of his wife, and since paid by him,
and thirdly, charging him with one-half of the net revenues,
which the defendants may prove to be derived from the use
of the common property, from the 25th January, 1816, till the
15th November, 1820.

As the judgment in question, related only to certain
specific property, and it does not appear certain, that it was
the only property belonging to the community, at the death
of Madame Broussard, we are of opinion, that the defendants
are not precluded from showing the existence of other joint
property at that time, and that, in its partition, the defendants
are not bound by the said judgment.

It is, therefore, ordered, adjudged and decreed, that the
judgment of the District Court be annulled and reversed ;
and it is further ordered, adjudged and decreed, that the
parties proceed before the parish judge, of the parish of
St. Martin, to the final settlement of the community, lately
existing between Michel Broussard and Anastasie his wife,
according to the principles expressed in this opinion, and
that the defendants pay the costs of the appeal.