Babin v. Nolan.

---

PIERRE PAUL BABIN *v.* JOHN NOLAN.

All the effects which the spouses reciprocally possess at the time of the dissolution of the marriage, are presumed to be common effects or gains, unless they satisfactorily prove which of such effects they brought into marriage, or have been given to them separately, or they have respectively inherited. C. C. 2374.

To ascertain, after the dissolution of a matrimonial community, the increase or improvements in the value of the hereditary property of either of the spouses, during the marriage, from the common labor or expense, the proper course is, to estimate the value of the property at the time of the dissolution of the community, in the situation in which it was at the date of the marriage, and its real value, with all the improvements existing thereon, at the time of such dissolution; and the difference between the two estimates will form the increased or improved value, to one half of which the other spouse will be entitled, on the settlement of the community. C. C. 2377.

A court, by whom experts have been appointed, is not bound to adopt their report. Any error in it may be corrected; another report may be ordered; or, rejecting the report altogether, the court may adopt any conclusion which the evidence, adduced contradictorily by the parties before the experts, or before the court, may warrant and justice require. C. P. 442, 451, 453, 461.

Proof that a husband received a certain sum during the existence of the community, in payment of a debt due to him individually, is not sufficient to charge the community with the amount, when there is no evidence that the community was benefitted by it, or that it was used in the purchase of community property.

A crop, made after the dissolution of the community, by the husband, on land be-

longing to him, partly with his own slaves, and partly with those of the community, cannot be considered as belonging to the community, nor be included in its settlement before the Probate Court. The husband is bound to account to the heir for the value or proceeds of the labor of the slaves, having acted as his *negotiorum gestor* in the administration of his property ; but this has nothing to do with the settlement of the community. The action of the heir, must be brought before the ordinary tribunals.

APPEAL from the Court of Probates of West Baton Rouge, *Favrot*, J.

SIMON, J. This case was before us last year, (4 Rob. 278,) and was remanded for further proceedings, for the purpose of ascertaining the value of such increase and ameliorations in the defendant's land, as may have been the result of common labor, expenses and industry, during the existence of his marriage with the plaintiff's sister, in conformity with the following rule, adopted by us, under art. 2377 of the Civil Code. We said, in our previous opinion, " that the safest rule to be pursued would be, *first, to put an estimate upon the value of the naked property, if unimproved at the time of the marriage, or to estimate it according to its value at the time of the dissolution of the community, but, if possible, in the situation in which it was at the time of the marriage ; and then to inquire into the real value of the hereditary property, with all the improvements existing thereon, in the condition in which it was at the time of the dissolution of the community ; and that the difference between the two estimations should form the increase, for one-half of which the other spouse should be compensated in the settlement of the community, according to the article above quoted."* We were of opinion that by following this rule, it would be easy to ascertain how far the increase in value of the naked property could be attributed to the ordinary course of things, to the rise in value of property, or to the chances of trade ; since its estimation according to its value at the time of the dissolution of the community, in the situation in which it was at the time of the marriage, would necessarily include its increased value, due to anything else but to the common labor, expenses, or industry of the spouses, during the existence of the marriage.

After this case was returned to the inferior tribunal, experts were appointed to appraise the property in conformity with our

decree, one of whom, (James McCalop,) was chosen by the defendant; another, (S. M. D. Clark,) was selected by the plaintiff; and a third, (Villeneuve Le Blanc,) was appointed by the court to act as umpire, in case the other two should not agree. The experts were severally sworn, and proceeded to comply with the order of the court, after having been put in possession of a statement giving the description of the property to be appraised, in the presence of the attorneys of both parties, who respectively declined offering any testimony; and after having examined the premises, being unable to agree in opinion as to the value of the property, they submitted their different reports to the consideration of the court, *a qua*, in substance as follows :—McCalop reported that he could not value the land and improvements at a larger sum than $3000, an *arpent* front, cash, making in all the sum of $24,000. He ascertained, that the land was worth, *when the defendant was first married*, the sum of $16,400, in cash, and established the difference, ($7600,) as being the enhanced value of the property, (including the improvements,) since the marriage until the time of the report.

S. M. D. Clark declared in his report, that he believed the property, with the improvements, to be worth, in cash, $47,000. He fixed the value of the land, *at the time of the marriage*, at $16,000, cash, and allowed the difference ($30,400,) as being the present increased value of the property, produced by improvements : and V. Le Blanc, acting as umpire, concurred in opinion with Clark, concluding that the improvements, at the dissolution of the marriage, placed on the property by the community, were worth $30,600 being the difference between the value of the land in July, 1841, and what it was worth, *at the time of the marriage*, to wit, $16,400.

The defendant excepted to the report of the experts on numerous grounds, some of which it is unnecessary to notice, but among which we find the following : 1st, That the plaintiff, having produced no evidence to show what improvements were made on his (defendant's) land, during the community, the experts were bound to presume that the improvements which they were called upon to appraise, belonged to the owner of the soil.

2d. That the report of McCalop is based upon the valuation of the improvements on the 5th of June, 1843, and the purchase price of the land in the year 1822; and does not show whether the enhanced value was the result of those improvements, or of the natural rise in the property.

3d. That the expert, Clark, values the property, on the 5th of June, 1843, at the sum of $47,000, and assumes the value of the property, *at the time of the marriage*, at $16,400, allowing the difference between the two sums, as being the present increased value of the property, produced by improvements, without showing what enhanced value the improvements gave to the property, or whether such value was the result of a natural rise in the value thereof.

4th. That the valuation given to the improvements, including the land, by the expert, Clark, and the umpire Villeneuve, is exorbitant and unjust; and that the same would not sell, in cash, for more than the value of the land and improvements; as fixed by the report of the expert, McCalop.

On the trial of this cause on the defendant's exceptions to the report of the experts, the experts were examined as witnesses, for the purpose of showing the basis of their respective reports. McCalop stated, among other details, that the enhanced value of the property, at the time he was called upon to make the appraisement, including the improvements, was the difference between the price it originally cost, reduced to cash, ($16,400,) and $24,000. That his knowledge of the value of the defendant's property, *at the time of his marriage*, and the improvements thereon, is derived from the views he took of the sales. He values the plantation at $3000 per acre, front, including it as it now stands. The value of the land is not enhanced in proportion to the value of its improvements; and the full amount of improvements is never paid for, in selling a piece of land. He adds, that the selling price of lands, such as the defendant's, is now from $1500 to $3000 per acre front, by 80 deep; and that on the day he met with the other expert at the defendant's, for the purpose of appraising the improvements, there were a great number of witnesses attending, but that none of them were sworn.

S. M. D. Clark testified, that in estimating the value of the

buildings on the plantation, he considered what they were worth on the place as they are, and did not appraise them according to their probable cost. He took the average crops as being the interest, at ten per cent, of what he considered the true value of the plantation. In the situation it now is, *with the buildings thereon*, he considers this land, *the front and back tracts*, to be worth $60 per *arpent*, and something upwards. He would consider the cleared land, without the buildings, to be worth, in cash, at least $50 an *arpent*. He further said, that in estimating the defendant's residence, he did not consider its original cost, but he estimated it as he would an ordinary residence, sufficient for such a plantation ; and he considers Le Blanc as one of the most competent persons the court could have appointed as umpire in this case. In another statement of the same witness, he goes on to give a detail of the manner in which his appraisement was made, and of the reasons by which he arrived at the conclusion by him adopted.

V. Le Blanc's testimony shows, that he estimated *the front tract, with all its improvements*, at $4500 per *arpent* front, by 40 deep, making $36,000 ; *and the double concession, at the rate of $35 per superficial arpent,* making $10,500 ; and that the difference being small, he concluded to take Clark's estimation as his own. He considers this appraisement as very moderate. He did not estimate the property, as to its value at the time of defendant's marriage. He has known the property since 1814, and *the buildings now on it, have all been erected since defendant's marriage.* He gives a detail of the improvements ; says they are very valuable, the most valuable he himself knows of in the State ; *values the front tract, without the buildings and improvements, at the rate of* $50 *the superficial arpent* ; considers that the value of this property did not increase in proportion to the value of its buildings, because they are of no use at all ; and in estimating the value of the plantation, he did not take into consideration the value of the pigeon houses, ice houses, and paling.

With this evidence before him, the Judge, *a quo*, took the report of the expert, Clark, and umpire, Le Blanc, as the basis of his judgment ; ordered that the difference between the price of the land, *at the time of the marriage*, viz., $16,400, and the price of the appraisement mentioned in the report, viz. $47,000, be de-

creed to constitute the value of the improvements belonging to the community, to be equally divided between the parties, and gave judgment accordingly. From this judgment the defendant has appealed.

The only real questions which this case presents, grow out of such of the defendant's exceptions to the report of the experts, as we have noticed. We shall, therefore, follow the same course in bringing them under our consideration.

I. The defendant cannot pretend here, to be the owner of the improvements, although the tract of land on which they are erected, has been shown to be his individual property. It is a well known rule, that "at the time of the dissolution of the marriage, all the effects which the spouses reciprocally possess, *are presumed common effects or gains*, unless they satifactorily prove which of such effects they brought in marriage," &c. Civil Code, art. 2374. Here, it is true, the defendant has established that the land belonged to him, by virtue of a purchase made previous to the marriage; but it is also in evidence, that it was unimproved at the time of the marriage, and the witness Le Blanc says, that the buildings now on the plantation *were all erected thereon after the defendant's marriage*. Besides, this part of the plaintiff's claim was not dis puted when the case was first before us. The defendant's claim was then limited to keeping his own land ; the improvements were inventoried as community property ; and it was not then pretended, that those improvements should belong to the owner of the soil. The soil itself would be presumed to be common property, if the defendant had not shown his title to it previous to the marriage, and he cannot claim the improvements thereon existing, unless he proves that they were there anterior to such marriage. This exception was properly overruled.

II. III. IV. These exceptions are so closely connected together, that they form but one question, to wit, did the experts act, and is their report made, according to the rule and principles recognized in our former judgment?

We have already expressed our views upon what we understand to be a correct interpretation of the rule adopted by us, and upon what we considered to be an exact compliance with it ; and it seems, from the proceedings had by the experts, and by the inferior court, that it was, if not overlooked, greatly misunder-

stood. It is clear, that the report of the experts, and the judgment appealed from, are based upon the estimation of the property according to its value *at the time of the marriage*; and that the in crease of the said property was ascertained, not by the difference between the value of the naked land *at the time of the dissolution of the community*, and its real value with all the improvements existing thereon at the same period, but by that between its value *at the time of the marriage*, and its valuation at the time that the experts acted. This is incorrect, as it is obvious, that this mode would necessarily include among the improvements, whatever en hanced value may be derived from the ordinary course of things, from the rise in the value of property, or from the chances of trade. We are at a loss to conceive what difficulty may have been found below, in pursuing the course pointed out by our first judgment. It is very simple, resolving itself into the following questions, to be answered by the experts, or by the evidence adduced by the parties.

*First.* What was the condition of the property at the time of the marriage?

*Second.* What would be the value of such property at the dissolution of the community, in the state in which it was at the time of the marriage?

*Third.* What was the real value of the said property, with all the improvements existing thereon, in the condition in which it was at the time of the dissolution of the community?

*Fourth.* What is the difference betwen the two estimates?

These questions are not answered by the report of the experts. They resorted to the sales, to ascertain the value of the land at the time when the defendant was married. They did not put any estimate upon it, according to its value at the period the marriage was dissolved. They did not consider its real value according to what it would have been worth with all the improvements *at the time that the community ceased:* but simply struck the difference between the price which the property had originally cost, reduced to cash, and the valuation thereof, with its improvements, on the 5th June, 1843, nearly two years after the dissolution of the community. It is true, the umpire, Le Blanc, says, that in estimating the value of the plantation, he would not take into consideration

Babin v. Nolan.

the value of certain useless improvements, put on the place since the death of the defendant's wife. This was correct, as the community has nothing to do with such improvements, which ought to be for the defendant's own account. But as the estimation of the property and improvements is before us, in a very unsatisfactory and incomplete state, and as the evidence, somewhat confused and contradictory, is not such as to enable us to do justice to both parties, by ascertaining the exact amount of increase of the property during the marriage, this case must again be remanded, with instructions to the Judge, *a quo*, to conform to the rules and principles established in this, and in our former opinion.

We said in our first judgment, that the exact value of the increase or improvements in controversy, should be ascertained by experts, or by testimony. This was only pointing out the means to be resorted to, for the purpose of obtaining correct information on the point under consideration; but neither of the parties was precluded from producing other testimony, particularly as the court, not being bound to follow the opinion of the experts, was legally authorized to correct any error existing in their report, or to order another report to be made by the experts, or even to reject the report altogether, and adopt such other conclusion as the evidence adduced contradictorily by the parties before the experts, or before the court, should warrant, and the justice of the case should require. Code of Practice, arts. 442, 451, 458, 461.

With regard to the sum of $600, which the defendant complains was not allowed to him by the inferior court, we think it was properly rejected. It is true, the evidence shows that a sum of $600 was paid to the defendant during the marriage, as being the proceeds of a mortgage debt due to him by the purchaser of a negro woman mortgaged to secure it; but nothing proves that the community ever was benefitted by it, or that it was used in the purchase of any community property.

Having thus disposed of the questions presented by the judgment homologating the report of the experts, we shall now proceed to examine certain proceedings which were had in the court below, in relation to the crops made on the plantation since the dissolution of the community, and the judgment rendered thereon on

the 20th of November, 1843, from which the defendant has also appealed.

It appears that the plaintiff, having vainly attempted to make an inventory of the crop made on the plantation in 1842, (those of 1840 and 1841 having already been inventoried,) was obliged to apply to the court, *a qua*, for a writ of sequestration. This was granted, and the crop, such as it was found in the sugar house, was taken possession of by the Sheriff in due course of law. In the meantime, an injunction was granted and issued at the suit of the defendant, to stay the execution of the judgment first rendered by the Court of Probates and affirmed by this court, so far as the object of the execution enjoined was to obtain the satisfaction of the sums of money due to the plaintiff under said judgment, on the ground that no final settlement of the community had ever been made, and that the same was yet in suspense and undetermined, &c.

The defendant excepted to the sequestration on the grounds :

1st. That the court, *a qua*, has no jurisdiction to order an inventory of property, held and owned by a third person in his own right, and as a *negotiorum gestor*, and to issue a writ of sequestration against the crop made on the plantation in 1842; and that the plaintiff, if he has any claim to set up on said crop, or to the hire of his slaves in working the same, ought to resort to the courts of ordinary jurisdiction against the defendant as a *negotiorum gestor*.

2d. That there has been no legal affidavit made by the plaintiff to entitle him to obtain a writ of sequestration, &c.

These exceptions were overruled, and the defendant having offered to file his answer to the merits, permission to do so was refused by the lower court, to which opinion of the court he excepted.

On the same day that the answer was presented to be filed, the injunction obtained by the defendant was made perpetual; and the parties having then agreed to postpone the investigation and settlement of the accounts relative to the several crops, &c., until the first Monday of September following, at which time all said accounts were to be filed, no further proceeding was had until the 2d of October following, when the plaintiff obtained a rule on the defendant to show cause why, on the 9th of the same month, the

Babin v. Nolan.

plaintiff should not be permitted to take his share of the moveables and immoveables belonging to the community. On the day last mentioned, the plaintiff obtained another rule on the defendant, to be allowed to take in kind his share of the said moveables and immoveables, which rule was subsequently answered by the defendant, who made opposition thereto, mainly on the ground of the insufficiency of funds belonging to the community to pay the debts and charges thereof.

On the same day, the defendant offered to file his account and vouchers in support thereof, and asked for a rule on the plaintiff to show cause, *within three days*, why said account should not be homologated. This was refused by the court, which stated in the bill of exceptions, that it was the opinion of the court, that if the defendant had made the necessary expenditures to produce the crops, *on proof thereof, they should be allowed.* Whereupon, the plaintiff proceeded to take down his testimony, and the defendant and his counsel, all left the court of their own accord, and did not appear any more in the course of the trial.

The trial proceeded. A good deal of testimony was heard and reduced to writing; and after a full investigation of the matters in controversy, the court, *a qua*, liquidated the nett proceeds of the crops to be equally divided between the parties; ordered the slaves and moveable property of the community to be divided in kind; the several tracts of land to be sold according to law, to operate a partition thereof; and provided for the subsequent division of the crop of 1843, according to the rights of the parties thereto.

From the view we have taken of the exception of the defendant to the jurisdiction of the Probate Court, with regard to the crop of 1842, raised on his land after the death of his wife, it necessarily results that all the proceedings had on the sequestration are null and void.

It is clear, that the crop of 1842 cannot be considered as belonging to the community formerly existing between the defendant and his deceased wife. It was made after her death, on the land of the defendant, partly with his own slaves, partly with those of the plaintiff, and partly with those of the community. The defendant is bound to account to the plaintiff for the value or pro-

ceeds of the labor of the slaves which he had inherited from his sister, having acted as the plaintiff's *negotiorum gestor* in the administration of his property.    But the community having ceased to exist in 1841, it follows, that any subsequent use of the common property by the defendant, to the prejudice of the plaintiff, by keeping the whole in his possession and under his administration, makes him liable to compensate said plaintiff for the profits or revenues which he would have derived from the property inherited, if the same had not continued in the defendant's possession. Again ; the defendant, acted as the plaintiff's agent, and, as such, he must account to him for all the consequences of his agency, and reimburse him his proportionate share of the revenues made with the property.    But this has nothing to do with the settlement of the community.    The situation of the community is established by the inventory made and closed on the 1st of February, 1842, which includes only the crops of 1840, and 1841 ; and the right of action which the plaintiff may have against the defendant in relation to the crops of 1842, and 1843, cannot be merged in the present suit, and included in the settlement of the community, but must be exercised before the ordinary tribunals.    Again ; the community has ceased to exist, (see case of *Broussard* v. *Bernard*, 7 La. 216,) and the Court of Probates is without jurisdiction to try the matters in litigation which may have arisen between the parties subsequent to its dissolution, and particularly those which may result from the defendant's responsibilities as a *negotiorum gestor*.    The declinatory exception of the defendant must, therefore, prevail.

This question was not presented to our consideration when this case was last before us, as the crop of 1842 was not then in dispute ; the judgment of the court below, affirmed by us, had only provided for its being subsequently accounted for ; and the rendition of the account was simply reserved until the final liquidation. No opinion was pronounced upon such rendition ; and, therefore, the judgment cannot be said to have acquired the force of *res judicata* on this point.

On the merits of the controversy, we think that the judgment appealed from, except so far as it liquidates the rights of the parties to the crop of 1842, and provides for a subsequent settlement

Babin v. Nolan.

of the crop of 1843, is correct, and should be maintained. It was the duty of the defendant to be present, with his counsel, at the trial of the cause. The record shows, that it had been repeatedly continued at his counsel's request ; that it had been definitely fixed for trial ; that he had agreed and promised to be ready on the first Monday in September ; that the illness of one of his counsel was the cause of its being postponed until the 2d day of October; that on that day, none of his counsel appeared ; that every time that the cause was called for trial, the plaintiff's counsel was ready to proceed ; that every opportunity and convenience was afforded to the defendant to prepare his case ; and that it was easy for the defendant to have produced on the day of the trial, all the vouchers and documents necessary for the liquidation of the proceeds of the crops in dispute. He had them in his possession when he moved the court for leave to file his account, and to rule the defendant to state, within three days, his objections thereto. He had no right to any such delay. He was not an administrator, or curator, whose account of administration was to be homologated ; and as the Judge, *a quo*, very properly remarked in the bill of exceptions, it was the duty of the defendant to furnish evidence of the expenditures by him claimed, as they could not be allowed without proof.

We have carefully examined the evidence on which the judgment appealed from is based, and have attentively perused the voluminous records in which it is contained. They exhibit, on the part of the defendant, a determination to yield to his adversary nothing but what the latter may be strictly and legally entitled to ; but we have been unable to discover in the judgment complained of, except with regard to the crops of 1842, and 1843, that any error has been committed to the prejudice of the appellant. The liquidation of the nett proceeds of the crops of 1840, and 1841, appears to be in accordance with the evidence. The appellant has been credited with large amounts of expenditures ; the division in kind of the slaves and moveables has been legally ordered to be made, as also the sale of the several tracts of land described in the inventory ; and, on the whole, we feel no hesitation in concluding, that justice has been done to the parties, with regard to all the matters in controversy settled and determined

in the judgment appealed from, which were within the jurisdiction of the Court of Probates.

It is, therefore, ordered, that the judgment first appealed from, so far as it homologates the report of the experts, and orders the difference of value of the property by them established to be divided between the parties, as being the value of the improvements belonging to the community, be annulled and reversed; that it be affirmed as to the rest; and that the case be remanded to the inferior tribunal for further proceedings in the adjustment of the rights of the parties to the said improvements, with instructions to the Judge, *a quo*, to conform to the rules and principles recognized in this, and in our former judgment.

And it is further ordered and decreed, that the judgment appealed from, as having been rendered on the 20th of November, 1843, be affirmed in all its parts, except so far as it liquidates the nett proceeds of the crop of 1842, and disposes of the crop of 1843; that the amount established by said judgment to be divided equally between the parties, be reduced to the sum of $32,488 93, instead of $42,756 12, reserving to the plaintiff his right of action against the defendant in the ordinary tribunals, for the recovery of what he may be entitled to out of the crops of 1842, and 1843, for the use of his property by said defendant as his *negotiorum gestor;* and that the costs of this appeal be paid by the plaintiff and appellee.

*Robertson* and *R. H. Chinn*, for the plaintiff.

*Lobdell* and *Labauve*, for the appellant.