CHARLES H. DAVIS, Husband, *v.* TENNESSEE ROBERTSON, Wife.

There may be cases in which the husband ought not to be allowed interest on debts of the wife paid by
him, as where the payment has been fraudulently deferred by him for the purpose of injuring her ;
but where the debt has been paid in good faith, the interest, as an incident of the debt, is chargea-
ble to the person who owes the same.

By giving the husband the administration of her paraphernal property, the wife relieves herself of
her portion of the marriage charges.

In the absence of proof of the wife's seperate administration of her paraphernal estate, it will be pre-
sumed to have been under the management of the husband.

APPEAL from the District Court of the Parish of East Baton Rouge, *Wilson*, J., presiding. *A. M. Dunn*, for plaintiff. *T. G. Morgan* and *S. Mathews*, for defendant.

MERRICK, C. J. This case was brought to liquidate the sums due the community by the seperate estate of the defendant. The community was dissolved by a suit for a separation of bed and board instituted by the plaintiff against the defendant, and was renounced by her by an act in due form.

Since the institution of the present suit, she has departed this life, and her heirs have been made parties. The cases of *Robertson* v. *Davis*, 9 Ann. 268, and *Kelly* v. *Robertson*, 10 An. 303, were connected with this litigation.

In the lower court, the case was referred to an auditor, to state an account between the parties. Both parties filed oppositions to the account, which was amended, and a judgment was rendered in favor of the plaintiff for the sum of $25,372 09, and five per cent. interest thereon, from the 15th day of May, 1858, until paid. The present defendants appeal.

Eight items of the auditor's account, amounting to the sum of $14,466 41, and the sum of $3,398, allowed by the District Judge, in addition to the auditor's account, (a total of $17,864 41,) are contested before this court.

I. The first three items opposed, are the amounts of interest paid on the separate debts of the wife. Her heirs contend, that as the husband had the benefit of the estates of the wife, which were under his administration, it was his duty, as an usufructuary, to keep down the interest; that he ought not to be permitted to enjoy her estates, and allow interest to accumulate upon her debts.

Possibly, there may be cases in which the court will refuse to allow the husband interest, where it was evident that payments are fraudulently deferred for the purpose of injuring the rights of the wife. But where debts are paid in good faith, the interest must be considered as but an incident of the principal obligation which it follows, and chargeable to the person owing the debt.

If the property of the wife was under the administration of the husband during the community, so was also his own property, and she had the right to one-half of the community on its liquidation, had she chosen to accept it. By giving the husband the administration of her paraphernal property, she relieved herself from her portion of the marriage charges. C. C. 2366, 2409.

II. The account paid the Picayune for subscription to that paper, and $42 96, were admitted before the auditor, and cannot be contested in this court.

III. It is next objected, that the District Judge erred in allowing $1,705 for ameliorations made upon the defendant's plantation, during the existence of the community. There is some conflict of testimony on this branch of the case.

Taking the doctrine of this court, as settled in 4 Rob. 278, 6 Rob. 508, and 6 An. 634, as the rule governing the case, it will not enable us to say that the District Judge erred in his estimate.

IV. There is no ground to suppose that the decree in the suit of *Tennessee Robertson* against the plaintiff, 9 An. 268, awarding her the administratration of her paraphernal property, can have the effect of the thing adjudged, so as to deprive the plaintiff of the horses and mules, belonging to the community. For although she alleges that she owned thirty mules, &c., at the same time, and in the same petition she averred, that there were twenty horses and mules belonging to the community. The latter were not transferred to her separate estate by the decree. And the same must be said of the new wagon, carriage, and household furniture. She had injoined the defendant from disposing of the community, and these very effects are mentioned in the inventory, caused to be taken by her, as as property of the community.

V. Defendants are charged with 1,100 bushels of corn and 50 acres of plant cane taken possession of when the deceased resumed the administration of her paraphernal property.

It is contended that her heirs ought not to be charged with this amount, because plaintiff must have received an equal amount when he commenced to administer the plantation, and that the one ought to compensate the other.

This view seems equitable, and, as we shall give the plaintiff the benefit of one-half of the crop of 1849, and the proof is uncertain as to the corn and plant cane that year, we shall deduct but one-half of these two items. The consent of the wife to use the corn and plant cane does not deprive her of the right to require compensation.

VI. The plaintiff was married to the deceased in July, 1849. The proof is, that the crop upon her plantation was then half made. The plantation was under the charge of the defendant, *W. J. Sharpe*, as overseer.

The deceased, in her suit for separation of property, filed in 1852, and sworn to in order to obtain an injunction, alleged that the crops upon the plaintiff's cotton plantation in West Feliciana and her separate plantation, for the years 1849, 1850 and 1851, belonged to the community. Subsequently, however, she amended her petition, and alleged that the crop of 1849, on her plantation, did not belong to the community. The District Judge allowed the plaintiff one-half of the crop of 1849.

There would be no difficulty on this branch of the case, but the testimony of the plaintiff in another case is produced, in which he says the management of the property was given him in January, 1850. But in another place he says, he frequently transacted business for the plantation in 1849, and it is shown that he had five or six of his own negroes engaged in taking off the crop, and it is not shown that the deceased exercised any control over the place after her marriage, until her suit for separation, and such appears to have been the opinion of this court in the suit for the separation of property. 9 An. 269.

As the property was not shown to be administered by the wife, separate and alone, it must be considered as under the management of the husband. C. C. 2362, 2375, 2376.

Had the crop been held separate, the deceased would have been bound for her proportion of the marriage charges. The debts contracted during this period were community, and we cannot say that the Judge erred in holding one-half of the crop of 1849, as community; but certain expenses incurred in making the crop,

must be deducted. The amount should be $2,806 40. For example, one-half of the overseer's wages should be deducted, as the plaintiff has credit for the same in another form.

DAVIS<br><i>v.</i><br>ROBERTSON.

VII. The auditor allowed $7,456 77, being eight per cent. to compensate plaintiff for hires, advantages and damages. This sum is sought to be justified, on the ground that plaintiff is entitled to be paid the hire of the mules belonging to the community, and to indemnify him for the damages sustained by the injunction, which prevented him from disposing of the effects of the community and paying the debts.

He alleges, in argument, that more than $5,000 interest has accrued on two of these debts, while he has been kept from making the assets of the community available. The injunction continued from the 15th day of January, 1852, to April 3d, 1854. The assets of the community amounted to $15,876 40. But a portion consisted of the claim due by the separate estate of the deceased to the community, and we do not suppose the injunction deprived the plaintiff of available means of more than $12,000, including the horses and mules. We think $2,119 99 will cover the special damages.

We cannot concur in the estimate made by witnesses for the hire of the mules.

The community was dissolved on the 27th day of November, 1856, and from this date, the sums due by the deceased to the community, exclusive of $2119 99 allowed as damages, should bear interest at five per cent., instead of the large sum allowed by the judgment of the lower court. The answers of the deceased to interrogatories of *Kelly, Frazier & Co.*, ought to have been excluded.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed; and we do now order, adjudge and decree, that the plaintiff do recover and have judgment against said *William J. Sharpe*, Mrs. *Leodocia R. Sharpe*, widow of *O. P. Davis*, Mrs. *Elizabeth J. Sharpe*, wife of *Samuel Matthews*, and *Ernestine R. Davis*, a minor, represented by *Richard A. Stewart*, her under-tutor, each for their virile share of the sum of seventeen thousand nine hundred and ninety-three dollars and eighty-one cents, with legal interest on the sum of $15,873 72, from the 27th day of November, 1856, until paid. And it is further ordered, that the plaintiff pay the costs of this appeal, and the defendants the costs of the lower court.

VOORHIES, J., absent.