Babin v. Nolan.

PIERRE PAUL BABIN *v.* JOHN NOLAN.

Courts of Probate have concurrent jurisdiction, with the District Courts, of an action by the heir for the settlement and partition of the community which existed between a husband and wife, after its dissolution by the death of the latter ; and the circumstance of the defendant's denying the heirship of the plaintiff, and alleging himself to be the heir, can in no manner change the nature or object of the action, so as to deprive the Court of Probates of its jurisdiction.   Nor can its jurisdiction be affected by the fact that the plaintiff's right to inherit must be determined, before proceeding to examine the issues relative to the settlement and liquidation of the community ; the competency of the court being determined by the nature of the legal rights which the plaintiff seeks to enforce, and not by the question of his right to recover.

Under art. 1037 of the Code of Practice, Courts of Probate are possessed of all the powers necessary to the exercise of their jurisdiction ; and they may consequently take cognizance of questions of title arising collaterally, the examination of which is necessary to the decision of the issue joined.

The principal object of the law requiring a public inventory to be made of all the effects, moveable and immoveable, of a succession or community, is to establish the existence of all the property, and to show the whole amount, or value thereof.   C. C. 1098, 1099, 1100, 1101.   Such an inventory is to serve us as the basis of the settlement of the estate, so far as it shows the effects belonging to it, but is not conclusive proof of the real value of the property, nor the exclusive criterion by which those who are interested, are to be charged in the partition and settlement of the estate.   Save where the law has declared in positive terms that the property inventoried shall be taken at the estimated value, such estimation is not conclusive.

Art. 2377 of the Civil Code which provides, that when the hereditary property of either of the spouses has been increased or improved during the marriage, the other shall be entitled to one-half of the value of such increase or amelioration, if proved to have been the result of the common labor or expense, does not contemplate, that to ascertain the value of such increase or improvement, every item of improvement shall be estimated separately, and the aggregate amount added to the estimation of the land.   This would often be unjust, as the increased value of the property would, in many cases, be far from equal to the original cost of such improvements.   The proper course is, to estimate the value of the hereditary property according to its value at the time of the dissolution of the community, but, if possible, in the situation in which it was at the time of the marriage, and then to inquire into its real value, with

Babin v. Nolan.

all the improvements existing thereon in the condition in which it was at the time of the dissolution of the community ; and the difference between the two estimates will form the increase, for one-half of which the other spouse should be compensated on the settlement of the community.

APPEAL from the Court of Probates of West Baton Rouge, *Favrot*, J.

SIMON, J. This is an action for a settlement and partition of the estate, in community, between the defendant and his deceased wife, who it is alleged was the plaintiff's sister. The petitioner represents that the defendant's wife, his sister, died on the 22d of July, 1841, leaving no heirs in the descending or ascending lines, and no other brother and sister besides himself, and that he is consequently her sole heir and representative ; that his sister intermarried with the defendant on or about the 13th of January, 1823 ; that on her decease, she left a large estate consisting as well of separate property, as of such as was held in community with her husband, the defendant, and acquired during their marriage ; that at the petitioner's instance, an inventory and appraisement were duly made in 1842, of all the property, effects and rights, moveable and immoveable, belonging to her succession, and the community ; from which it appears that the whole active mass of the succession and community property amounted to the sum of $187,874, as estimated by the appraisers, exclusive of certain bank stock, and other articles of personal property. He states that he has accepted his sister's succession under the benefit of inventory, and that he is desirous of having a judicial partition of the estate in community. He points out, and gives a detail, of all the property which he claims as his sister's separate estate ; claims his half of the balance of the property put down on the inventory, as community property, and prays that a partition thereof may be decreed to be made according to law, and that he may be put in possession of the separate estate of the deceased. He also prays for judgment against the defendant for certain sums of money, and for the one-half of the value of certain improvements made, during the marriage, on the defendant's tract of land, &c.

The defendant first filed certain exceptions to the plaintiff's action, alleging that the Court of Probates is without jurisdiction to try the matters set forth in the plaintiff's petition ; and that this is

an action of revendication, for the recovery of real rights, which involves the title to property, and not a succession held in common by co-proprietors. He also excepted to the inventory annexed to the plaintiff's petition, as having been made *ex parte*, and as not binding upon the respondent, contradictorily with whom it should have been made. He concludes by alleging as a further exception, that the allegations contained in the plaintiff's petition, are vague, uncertain, insufficient, and unsatisfactory ; that they do not enable the respondent to answer said petition, in a proper manner, and that he cannot answer the plaintiff's demand, until he supplies the defects by an amendment to his petition, &c.

The defendant's exceptions having all been overruled by the inferior court, he filed an answer to the merits, in which he first pleads the general issue, and expressly denies that the plaintiff is the legitimate brother, of his (defendant's) late wife. He denies specially that the plaintiff is the son of the father and mother of the deceased. He denies also that he is entitled to any part of the property by him sought to be recovered, or that.he has any title whatever to any part of the property specified in his petition ; and renews his plea to the jurisdiction of the court by averring that this, being a question of title, cannot in any manner be tried by the Court of Probates.

The defendant proceeds, in his answer, to specify the property which he owned at the time of his marriage, and the sums of money which he brought into the community, and which were employed and used, subsequently, for its benefit. He gives a long detail not only of all the property, real and personal, moneys and credits composing his separate estate, and which exist in kind, but also of all the effects which were acquired during the marriage, and since the dissolution of the community. He further alleges that the inventory on which the plaintiff's action is based, is not binding upon the defendant, the same having been made *ex parte*, and being illegal and irregular ; that he, said defendant, protested against it, at the time, and only signed it with the express understanding that his legal rights should be reserved ; and he denies being accountable to the plaintiff, for any part of the property thus illegally inventoried. He further states that sundry articles of property, which he specifies, were not placed on the inventory ;

that the slaves of his wife did not come into his possession until 1836 or 1837, before which time the improvements estimated in the inventory, had been made, erected, and finished; that one-half of the community property, as shown by the inventory, belongs to him, and that the other half is bound and liable to pay him the sum of $108,700, the amount of the proceeds of the obligations, mortgages, notes and other credits, and of the sales of his separate property alienated and sold since the marriage, and which were employed, used and advanced by him, for he use and benefit of the community. He also avers that, in default of legitimate heirs of his wife, he is in law entitled to inherit the whole of her estate; and concludes by praying that the plaintiff's demand may be rejected; that a judgment may be rendered in his (defendant's) favor, for his separate property, and for the sum of $108,700, with interest; that said sum be adjudged to be a privilege and lien on his wife's moiety of the community property; that he be allowed to retain possession of the same until his advances are fully paid; and that it be decreed that his late wife died without leaving any heir or relation; and that the defendant, as her surviving husband, is in law entitled to inherit the whole of her estate.

There was judgment in favor of the plaintiff, recognizing him as the only heir of the defendant's late wife; establishing and specifying the property which belongs to the parties respectively and separately; liquidating the various sums shown to be due to the defendant by the community, as also to the plaintiff in right of his deceased sister; and finally ordering a partition to be made according to law, between the plaintiff and defendant of all the property, real and personal, rights and credits held by them in community, and refering the partition to a notary public appointed by the court. The judgment further decrees a mortgage and privilege in favor of the plaintiff on the defendant's property, for the restitution of the amount brought into marriage, or subsequently acquired during the marriage by the deceased, and for the reimbursement of the one-half of the price of the lands declared to be the separate property of the defendant, and the one-half of the value

of the improvements made thereon.    From this judgment, the defendant has appealed.                    •

Before proceeding to the examination of the facts of the case, as disclosed by the volumnious record now under consideration, and before inquiring into the correctness and legality of the various opinions expressed by the inferior judge, on the numerous points of law incidentally raised, during the progress of the trial of this suit, which incidental points form the subject of twenty-six bills of exception, our attention is arrested by the question of jurisdiction which grows out of the exceptions filed by the defendant.

It is contended that this is an action of revendication, which strictly involves a question of title, based on heirship, each party setting up title exclusively in himself to the succession of the deceased ; and that, therefore, the Court of Probates, being a tribunal of limited jurisdiction, could not try this case, which is not one of those expressly or impliedly coming under its powers

We had thought from the repeated decisions of this court, on a subject so often brought to our notice, that this was no longer a debateable question, and that this matter was generally understood as having been definitively settled in our jurisprudence ; but the defendant's counsel appear to be under the impression, that this case presents a question of jurisdiction, entirely different and distinct from those which we have hitherto had occasion to notice, and that the circumstance of the defendant's denying the alleged heirship of the plaintiff, and alleging the right of inheriting to be in himself, forms a first and preliminary question of title, which cannot be submitted to and decided upon by the Court of Probates, without violating the rules pointed out and established by our laws on the subject of jurisdiction.

It does not seem to us that the issues made by the defendant, can in any manner make any material change, in the nature and object of the action instituted by the plaintiff.   It is essentially an action for the settlement and partition of the community, in which the plaintiff, in the right of his sister, who was the defendant's late wife, seeks to ascertain, establish, and recover the portion to which the deceased was entitled in the active mass of the community ; and ever since the decision of this court in the case of *Turner* v. *Collins*, (1 Mart. N. S. 370,) Courts of Probate have been re-

peatedly and uniformly recognized in our jurisprudence to have jurisdiction, if not exclusive, at least concurrent with the District Courts, in such cases. In the case of *Broussard* v. *Bernard*, (3 Mart. N. S. 37,) which originated in a suit instituted by the heirs of the wife against the husband, for the division of the community pro perty, this concurrent jurisdiction was positively recognized; and so it was again decided in 3 Mart. N. S. 172. 7 Ib. N. S. 470. 9 La. 584.

It is true that, in this case, the question whether the plaintiff is entitled to inherit is first to be determined, before proceeding to the examination of the issues relative to the settlement and liqui- dation of the community. It is true also that, until he shows his right of heirship, the community is not to be inquired into; and that the defendant has, until then, no account to render to the plaintiff from the administration of the common property. But we must not confound the right of action, which the plaintiff is ne- cessarily bound to set up, and which he must prove when the other party requires it, with the object and nature of the action itself. It is based here upon the fact that he is the heir of the deceased, and this, like any other fact, is required by law to be shown, be- fore his being enabled to exercise the action brought before the com- petent tribunal. Such competency is not to be tested by the mere question, whether the plaintiff, is or not entitled to institute the ac- tion; but, by the nature of the legal rights which he seeks to en- force in the exercise of his action. So, under arts. 1000, 1001, 1002 and 1003, of the Code of Practice. The law requires that the heirs who claim a succession should first establish their right of heirship, that is to say, *their title* to the succession; and it is only after the Judge of Probates is satisfied that they are entitled to it, that he orders them to be put in possession of the estate which is the object of the action, and directs the administrator to render his account. In this case, the action is clearly one for the liquidation and partition of the community, and is directly under the application of the doctrine recognized by us in the case of *Lawson* v. *Ripley*, 17 La. 246, in which the present question was fully investigated, and where the jurisdiction of the Court of Probates, was decided to be, in such cases, *concurrent* with that of the District Court. In many similar cases brought before this

court, the question of jurisdiction was not even raised ; and although the want of jurisdiction would be one *ratione materiæ*, this tribunal always decided the matters in controversy on their merits, without entertaining any doubt as to the jurisdiction of the Courts of Probate from which the appeals were brought up. See 10 La. 172. 1 Robinson, 149, 271, 512.

We must not lose sight also of the powers given by law to Courts of Probate, which, under the 1037th art. of the Code of Practice, possess all such powers as may be necessary to enforce their jurisdiction. Accordingly, we have often held that, in matters of which they have jurisdiction, the Courts of Probate must take cognizance of the questions of title which arise collaterally before them, and the examination of which is necessary to the decision of the issue joined. 5 Mart. N. S. 217. 6 Ib. N. S. 298. 8 Ib. 465. 12 La. 218. 17 Ib. 249.

Having thus disposed of the question of jurisdiction, by sustaining the jurisdiction of the court *a qua*, we shall now proceed to the examination of such of the numerous bills of exception, as may be necessary for the final adjustment of the rights of the parties.

The first bill which we have to notice is one relative to the introduction of certain certificates of birth and marriage, in support of the plaintiff's legitimacy. They were admitted by the lower court, but an attentive examination of the record has enabled us, without the aid of those certificates, to ascertain the fact sought to be proved by them. The parol and other written evidence adduced by the plaintff shows conclusively, that he was always considered as a child from the legitimate marriage of the defendant's wife's father and mother, and that consequently he was *her brother*. The testimony on this important fact stands uncontradicted, and it cannot, in our opinion, be disputed that, without the certificates objected to, the plaintiff's legitimacy is satisfactorily established.

The next is taken to the opinion of the inferior court which received the inventory annexed to the plaintiff's petition, as *legal evidence* of the value of the property and of the improvements. This document was objected to on the ground that it is an *ex parte* proceeding, made at the sole instance of the plaintiff, and is

illegal, irregular, and not binding upon the defendant. It seems to us, that the objections made go rather to the effect of the evidence, than to its admissibility ; but as this is perhaps the most important point which this case presents, we shall at once examine the effect and legality of the evidence, and express our views upon the force and extent which the lower judge has given to the contents thereof, as to the value of the improvements made, during the marriage, upon the tract of land claimed by the defendant as his separate property, without considering or attaching any importance to the technical objections made by the defendant's counsel to the admission of the document, otherwise than as proof of what it contains.

This inventory was made at the request of the plaintiff, and was begun on the 26th of January, 1842. Its not being signed by the defendant would perhaps raise the presumption that it was made in his absence; but we find at the close of it, dated the 28th of January, a sworn declaration of the defendant, in which he states *under oath*, that "*he had brought forward all the credits of the community which existed between him and his deceased wife, and had caused to be inventoried and appraised all the real and personal property, belonging either to said community, or to him and his said wife separately, to the best of his knowledge and belief.*" From this declaration, we must conclude that the defendant was present at the inventory, and that it was not made *ex parte*; for the defendant's statement, that he caused the property to be inventoried and appraised, includes necessarily the idea that he was there all the time to point out the property to the appraisers.

Taking therefore the inventory under consideration, as an act made with the consent and in the presence of the parties interested, what does it prove ? The principal object of the law, in requiring a public inventory to be made of all the effects, moveable and immoveable, belonging to a succession or to a community, is to establish the existence of all the property, and to show the whole amount or value thereof. Such inventory is to contain the estimate of all the effects to be made as to each article, by appraisers, who must be appointed and sworn by the judge or notary who makes the inventory : (Civil Code arts. 1098, 1099, 1100 and 1101 ;) and after it has been registered, it shall be admitted as

proof in courts of justice.  Ib. art. 1103.  Such an inventory is to serve as the basis of the settlement of the estate, so far as it shows the effects, moveable and immoveable, moneys and credits belonging thereto, and so far as it establishes its situation; but we are not ready to say that it should be received as conclusive proof of the real value of the property therein described, so as to be used as the exclusive criterion by which the interested parties are to be charged, in the partition of the property, and settlement of the estate.   Except where the law has positively said that the property so inventoried shall be taken at the estimation price, we understand that the estimation made by the appraisers, not being conclusive, must often yield to the proof of its being excessive or incorrect.

Now, in this case, the judge, *a quo*, says in his decree, that, disregarding the testimony adduced by the parties in relation to the value of the improvements made during the marriage, which testimony he considered as incoherent and contradictory, he took *for basis* and *as a criterion*, the value which was set thereon by the two sworn appraisers at the time of the inventory.   Those appraisers were not examined on the trial of the cause, and if their estimation was to be taken as proof of the value of the property, it would follow that, without being sworn as witnesses, according to art. 478 of the Code of Practice, and without any opportunity being afforded to either of the parties to cross-examine them, their statements would be received as evidence on the most important and material facts, which in a case like this, are to be brought under the consideration of the court.

We think the inferior court erred.   The inventory produced by the plaintiff contains a separate estimation of all the improvements made during the marriage on the defendant's tract of land, and of the tract itself.   It shows the estimate of the land to be at the rate of $50 an *arpent;* every article of improvement is estimated separately ; and it contains also the statement made by the appraisers, that the appraisement put upon the landed property claimed by the defendant, was intended to be $30 a superficial *arpent* for the woodland, and $20 for the clearing of the same ; and that the twenty dollars should be considered as an improvement, and ought of right to belong to the community.   This estimation was adopt-

Babin v. Nolan.

ed by the court below, which charged the defendant not only with the value of the improvements, as shown by the inventory, but also with those resulting specially from clearing and ditching the defendant's land. Now under art. 2377 of the Civil Code, "*when the hereditary property of either of the spouses, has been increased or improved during the marriage, the other shall be entitled to the reward of one-half of the value of the increase or ameliorations, if it be proved, that such increase or ameliorations are the result of the common labor, expenses or industry ;*" but no reward is to be due, if the increase is due only to the ordinary course of things, to the rise in the value of property, or to the chances of trade. We do not understand this law to mean that, to ascertain the value of the *increase* or improvement, every article of improvement should be estimated separately, and the amount of the aggregate added to the estimation of the land. This would often be unjust, as the relative increase of the property might, in many instances be very far from being adequate to the costs and expenses which the ameliorations originally occasioned ; and one of the spouses, or his or her heirs, would perhaps thereby enrich themselves to the prejudice of the other. The safest rule, in our opinion, to be adopted would be : first to put an estimate upon the value of the naked property, if unimproved at the time of the marriage, or, to estimate it, according to its value *at the time of the dissolution of the community*, but if possible, *in the situation in which it was at the time of the marriage*, and then to inquire into the real value of the hereditary property with all the improvements existing thereon, *in the condition in which it was at the time of the dissolution of the community*, and the difference, between the two estimations, will form *the increase*, for one-half of which the other spouse should be compensated in the settlement of the community, according to the article above quoted. This was not done below ; and although the record contains the testimony of several witnesses examined to ascertain the value of the property with and without the improvements, their evidence is so contradictory that we think justice requires this case should be remanded for the purpose of ascertaining, either by experts, or by further testimony, the exact value of the increase or improvements

in controversy, according to the rule by us adopted under art. 2377.

With regard to the increase of value of the defendant's land, resulting from its having been cleared and ditched during the marriage, we think it ought not to be *specially* allowed. It appears to us that such clearing and ditching were necessary for the cultivation of the land, from which the community was benefitted ; and that if any advantage has been derived to the defendant by increasing the value of his land, such increase will necessarily be accounted for, and included, in the estimation thereof made under the rule above established.

The next is a bill of exceptions to the court's overruling the motion of the defendant for a continuance. We shall not inquire into the grounds on which the continuance was refused; for, as the case is to be remanded, we can see no objection to the defendant's being allowed to produce such further evidence as is alluded to in his affidavit, and which may serve to ascertain his rights, and to support such of his pretensions as, for want of evidence, may have been disregarded below. He cannot be permitted, however, to offer any other proof.

The next is a bill of exceptions taken to the court's refusal to receive in evidence, certain sales of slaves made by the defendant previous to his marriage. Those sales are dated in 1820, and the considerations therefor appear to have been collected, and paid, previous to the marriage. It is clear, that those sales cannot be received as evidence of separate money or property brought into the community by the defendant, as, if he, at the time of his marriage, really had the money which he is entitled to claim from the community, the origin of such funds is immaterial and irrelevant. The defendant cannot be allowed to recover any other sums but those, which he can prove that he brought into the community.

We have attentively examined all the other bills of exceptions contained in the record. Several of them are unimportant, and many of the others relate to the points already disposed of, and particularly to the value of the improvements so much contested between the parties, and to the evidence by them adduced respectively, in support of what they conceived to be a correct estimation thereof. It does not seem to us that any of the bills of ex-

Babin v. Nolan.

ception, which we do not think necessary to notice he re specially, require our interference ; and we have been unable to discover that any error has intervened to the prejudice of either of the parties, from the opinions of the judge, *a quo*, as expressed in those bills.

On the merits ,after a careful and attentive perusal of the voluminous record submitted to our consideration, it does not appear to us that any error has been committed, except, so far as the judgment appealed from allows the value of the improvements, according to the estimation and statements contained in the inventory, and which form the items of $36,430, among those complained of by the defendant. This should be corrected in conformity with the rule above established. The rest of the judgment seems to us correct. The case was fully investigated in the lower court ; and from the admissions made by the parties as shown by the record ; from the different titles and documents by them established ; and from the parol evidence by them adduced respectively, we have come to the conclusion that there is nothing in the judgment, except as above stated, which requires us to disturb it.

It is therefore ordered, that the judgment of the Court of Probates, so far only as it allows the value of the improvements made during the marriage on the defendant's landed property, according to the estimation put upon them by the appraisers as shown by the inventory, be annulled : that the case be remanded to the lower court for further investigation, as to the value of such increase and ameliorations as may be the result of the common labor, expenses, and industry, according to the principles above recognized : that in all other respects, except so far as it may be necessary to amend or modify it, after the defendant shall have produced the evidence alluded to in his affidavit for a continuance, and which he shall be permitted to offer before the inferior court on the remanding of this case, and no other, the judgment appealed from be affirmed ; and that the costs of this appeal be borne by the appellee.

*Robertson* and *R. H. Chinn*, for the plaintiff.
*Brunot, Lobdell,* and *Labauve,* for the appellant.