## PIERRE PAUL BABIN *v.* JOAN NOLAN.

A judge before whom a cause is being tried, is a competent witness for either party. The act of the 25 March, 1828, sec. 6, provides in what manner he shall be sworn, and how his testimony shall be reduced to writing, if required by either party.

Art. 2377 of the Civil Code, which provides that when the hereditary property of either of the spouses has been increased or improved during the marriage, the other shall be entitled to one half of the value of such increase or amelioration if proved to have been the result of the common labor or expense, does not contemplate that to ascerain the value of such increase or improvement, every item of improvement shall be estimated separately, and the aggregate amount added to the estimation of the land. This would often be unjust, as the increased value of the property would, in many cases, be far from equal to to the original cost of such improvements.

APPEAL from the Court of Probates of West Baton Rouge, *Favrot, J,*

SIMON, J. This is the sequel of a case which we had twice occasion to remand to the inferior court for further proceedings, in the adjustment of the rights of the parties to the value of certain improvements, made during the existence of the community, on the plantation owned by the defendant. See *Babin v. Nolan,* 4 Rob. 278, and 7 Robinson. According to the last decision of this court, the only matter in controversy upon which the action of the inferior tribunal was required, was to ascertain the exact increase in value of the defendant's plantation, for one half of which the plaintiff, as heir of his deceased sister, should be compensated in the settlement of the community, according to the legal principles recognized by this court.

Accordingly, after the return of our mandate to the lower court for execution, it appears by the record that on the 22d of April, 1844, the parties came before the court *a quâ,* and the following entry was made upon the minutes of said court, to wit : " By agreement of parties, the trial of the matters relative to the improvements, are fixed for trial for Monday next, the 29th instant."

On the day appointed the trial commenced, and each party produced his witnesses ; and, after a full investigation of the matters in controversy, judgment was rendered by the court *a*

*quâ*, condemning the defendant to pay to the plaintiff the sum of fifteen thousand dollars, being the one half of the enhanced value given to the said defendant's separate property, from the improvements placed thereon during the existence of the community; and from this judgment the defendant has appealed.

The record which has been brought up by the appellant, appears to contain, under the certificates of the clerk and of the judge, all the evidence adduced by the parties on the trial of the case below, and all the proceedings had during said trial; but before enquiring into the correctness of the judgment appealed from, it becomes necessary for us to dispose of an application made by the appellant's counsel, to be permitted to bring under our consideration, a certain bill of exceptions, alleged to have been taken to the opinion of the inferior judge upon another subject, and which, not being in the record, said counsel requested us, on the filing of their affidavit, to order the production of by a writ of *certiorari*.

Before this cause was fixed for trial, a motion was made by the appellant's counsel, supported by their affidavit, for an order to be directed to the judge *a quo* and to the clerk of his court, instructing them to make a complete transcript of all the proceedings, as well as of all the documents used and filed in this suit on the 22d of April, 1844, and to send them up to this court, consisting in an account marked A, a written motion marked B, an affidavit marked C, and a bill of exceptions; all relative to a certain motion made by the defendant on said day, for leave to examine certain witnesses to prove and establish the account A and vouchers, and to prove that the appellant, Nolan, paid the community debts stated and established in said account, which existed against the community between him and his deceased wife, and also for leave to take commissions to procure the testimony of other witnesses to prove said account and vouchers, &c.; which motion was overruled by the judge of probates, to whose opinion a bill of exceptions was taken, &c.   A writ of *certiorari* was issued accordingly, to which the judge and his clerk filed separate answers.

The judge *a quo* states, in substance, that the documents required to be brought up have never been filed in the suit, be-

cause they had been refused by the lower court, whose judgment was affirmed by the appellate tribunal; that said judgment was considered as *res judicata*, because the account and vouchers had been twice produced and rejected—the first time on the trial of the matter of the crops, and subsequently on the trial of the matter of the improvements, which was the only question then remaining open under the decision of this court. He further states, that said account was again rejected, because the court was aware that the same was false, as the defendant at the time of the inventory had declared that he owed nothing, and had given a memorandum of the amount due him, &c.

The clerk answers that when he was called upon by the defendant to make out the transcript, he was required by *both* counsel to leave out all documents and proceedings which had not a strict bearing on the matter at issue, to wit, the value of the improvements. That on perusing the minutes and papers in the suit, he ascertained that only two documents were to be left out, to wit; 1st, a motion made by defendant to examine witnesses to prove payment of community debts, which was overruled by the court; and 2d, an order of the court relative to the defendant's objections to the sale of community lands, &c., which were also overruled. He further states, that he has been unable to find the documents mentioned in the *certiorari*, and that they have never been filed. He also recollects that the account and vouchers spoken of were presented several times by the defendant's counsel, to be filed, but were as often rejected by the court, which refused to let them be filed; and he concludes by saying, that the papers called for have never been in his possession, and that it is impossible for him to give any transcript thereof.

After the filing of these answers, the appellant's counsel filed a counter-affidavit, in which they contradict the statements made by the judge and clerk; but the appellee's counsel, having consented to take the copies produced by their adversary as if they were true copies from the originals really in existence, the question now presented by the arguments is, whether the motion made by the appellant's counsel on the 29th of April, 1844, was properly overruled?

It is proper, however, that we should remark, that, in due respect to the judges of inferior tribunals, we were not ready to permit or countenance any investigation of the reasons for which the documents called for were not produced, any farther than they were shown by the answers of the judge *a quo* and of his clerk. They should be conclusive, in our opinion; and we should have disregarded the appellant's application after said answers were read, showing that said documents were never filed, had not the appellee's counsel consented to consider them as a part of the record, and had we not been impressed with the idea that the appellant, who appears determined to protract this litigation as long as he can, might perhaps subsequently make it a ground for further delaying the final adjustment of this cause.

But supposing the bill of exceptions to be now regularly before us, we think the appellant's motion was properly overruled. This is clearly an attempt to introduce now into this cause, a matter which should have been brought before the inferior court on the trial of the suit on its merits under the issues presented by the pleadings, and particularly on the trial of the matters relative to the liquidation of the proceeds of the crops sold and disposed of by the appellant, the investigation of which, as also of the defendant's claims for the payment of community debts, had been postponed by an interlocutory judgment rendered on the first trial of the case, to a further and subsequent period. It appears from the old records, and from the defendant's affidavit, made below in support of his motion, that these are the same account and vouchers which were once offered to be filed, in support of an account of administration which the defendant had pretended to offer to the court *a quâ*, when he made an application for a rule on his adversary to show cause, *within three days*, why said account should not be homologated. This was refused by the court, which, as we held in our last decision, very properly decided that there was no account to be homologated, and that it was the duty of the defendant to furnish evidence of the expenditures by him claimed, as they could not be allowed without proof. Whereupon, the defendant and his counsel left the court room, and refused to attend any more to the trial,

which went on in their absence; and the liquidation of the proceeds of the crops was finally adjudicated upon, leaving a balance against the defendant. He took an appeal to this court, which resulted in the affirmance of the judgment complained of; and if he is to sustain any loss from declining to produce his evidence in due time, and from abandoning his cause on the day of the trial, he cannot blame any one but himself.

Furthermore, on referring to the pleadings, we find that the appellant pleads in his answer, in compensation of the proceeds of the crops which he was called on to account for, the community debts he alleges to have paid; and that he claims also a certain amount which he says is due to him, as the proceeds of obligations, mortgages, notes and other accounts, to which he is entitled; and he prays to be allowed to retain possession of the community property until his advances are fully paid. These last matters were investigated in our first decision, when the judgment appealed from was affirmed, in all respects, except as to those which were reserved for a subsequent investigation, and which became afterwards the subject of the second appeal. 4 Rob. 278. On the second appeal, the judgment of the lower court was again affirmed, except with regard to the matter of the improvements; and we did not then entertain the idea that the appellant, who had so improperly withdrawn from the trial of the cause, on the day fixed with his consent, because the judge *a quo* had refused to receive and homologate his account without proof, should any longer be permitted to bring in question his said account and vouchers, which were, under the pleadings, closely connected with the matter of the crops definitely settled; or any other subject matter but that, for the adjustment of which the case was remanded. A careful re-examination of the old records has satisfied us that all the money matters existing in controversy between the parties on the previous trials below, and before this court, have been finally settled and adjudicated upon by the judgments subsequently affirmed; that the various sums shown to be due to the defendant by the community, have been justly liquidated; that those judgments have now the force of *res judicata* between the parties, upon all the subjects therein determined; and that they must have the same

effect on the account and vouchers which the appellant, having failed to produce and prove in due time, has sought in vain to introduce and investigate in the lower court, beyond the object which we had in view in remanding this cause for further proceedings. See also the case of *The State* v. *The Judge of the Court of Probates of West Baton Rouge*, decided in June, 1844. It is now too late ; and we conclude, therefore, that the appellant is now precluded from setting up the pretensions upon which he based his motion which was overruled by the inferior court ; and that the only matter which we have to consider on this appeal, is the one which we shall now proceed to examine.

In its present stage, the case on its merits presents a mere question of fact, which appears to have been thoroughly investigated below ; but before proceeding to weigh the evidence upon which the judgment appealed from was rendered, it behoves us to inquire into several bills of exceptions which are found in the record.

The first is with regard to certain questions put by the defendant's counsel to the first of the plaintiff's witnesses on his cross-examination, with the view of enquiring into the estimate, or particular value of each of the buildings, for the purpose of ascertaining upon what basis said witness made his estimate of the whole plantation, including the improvements, and whether the cost of the clearing, fencing, and ditching, did not form a part of his estimate ? The witness had already stated that it was worth from $25 to $30 per *arpent*, for clearing, fencing, and ditching the front land ; that the whole front was cleared, ditched and fenced; and that it was worth the sum of $15 per *arpent*, to clear the back lank ; and he had gone into a statement of the particulars of the buildings erected on the property, since the marriage up to its dissolution. It seems, from the bill of exceptions, that the plaintiff declared that he had no objection to the witness being asked any question, to show *upon what basis the property was by him estimated ;* but that his objection was, that the defendant should not take this opportunity of enquiring into the costs of ditching, clearing, and fencing, and of each particular building or improvement ; which objection was sustain-

ed by the judge *a quo,* as applicable also to all the witnesses subsequently examined.

We think the objection was well founded. We have already said, in our first decision, that " we did not understand the law to mean that to ascertain the value of the increase of property, every article of improvement should be estimated *separately ;* and that with regard to the increase of value of the land, resulting from its having been cleared and ditched during the marriage, it ought not to be *specially* allowed ; because, if any advantage has been derived to the defendant by increasing the value of his land, such increase would necessarily be accounted for and included in the estimation thereof made under the rule by us established." Under this view of the question then presented, we never intended that the parties should be permitted to go into an enquiry as to the separate estimate of each improvement, and of the original cost thereof; these facts are entirely foreign to the issue in controversy ; an inquiry into them would only mislead or serve to confuse the testimony, and prevent the exact ascertaining of the increase of the property in the true spirit and meaning of the law ; and we are not ready to say that the plaintiff's objection to such an improper enquiry, was incorrectly sustained. It appears, also, from an examination of the testimony, that the subject in dispute has been enquired into to its fullest extent, under the doctrine settled in our previous decisions.

The next bill of exceptions which we deem it necessary to examine, is in relation to the testimony of the judge of the inferior court, which was objected to by defendant's counsel, on the grounds that as said judge was obliged to form his opinion and judgment of the value of the improvements by the facts shown by the evidence, and by the testimony of other witnesses, this would be permitting the judge to prejudge the very question which he had to decide after hearing all the evidence and testimony on both sides ; but the plaintiff's counsel having insisted on the presiding judge's answering the questions, his testimony was taken and reduced to writing to serve as evidence in the cause.

By an act of the legislature of the 25th March, 1828, (Bull. &

Curry's Digest, p. 432, § 6,) it is provided, that in every case pending in any court provided with a clerk, in which the judge of said court may be a material witness, the clerk shall administer the oath to said judge, and shall take down his evidence in writing, which shall be filed *and used as evidence in the cause.* The object of this law was to remedy a great inconvenience, and to point out the manner in which presiding judges should be sworn and their testimony procured, as theretofore the parties were deprived of their evidence, owing to their being no one authorized to administer the oath to them in open court, whilst they presided. That a judge is a competent witness to testify in any cause, is incontrovertible. The law has made no such exception to their competency as witnesses; and although the facts which are within their knowledge, might, from their materiality, turn the scale in favor of one of the parties litigating their rights before them, and be the basis of the judgment to be rendered in favor of such party, we cannot see any valid reason why a suitor should be deprived of such evidence in support of his rights, because, forsooth, the judge whose testimony has been procured, is to pronounce his judgment upon the cause in which such testimony is to be used. The objection was properly overruled.

The third and last bill of exceptions which we shall notice, is to the rejection of that part of the testimony of a witness, going to prove the materials employed in certain separate buildings of the defendant, and used afterwards in the construction of the buildings appraised as belonging to the community. We concur with the judge *a quo* in the opinion, that under the course pointed out by this court in its former decrees, the value of the buildings existing on the place in 1823, are necessarily included in the estimation made of the value of such place with the same buildings in 1841; and that, therefore, the value of the materials subsequently used for the benefit of the community, are also included and accounted for in such estimation. The evidence offered would only serve to charge the community twice with the same thing, and we think it was properly rejected.

We now pass to the merits of the enquiry, and we must ac-

knowledge that, although it is a mere question of fact, it is not free from difficulties. A certain number of witnesses have been examined on both sides, who have not only differed on the estimate of the property according to its value, with or without the improvements existing thereon at the time of the dissolution of the community, but have also given different and inconsistent reasons to show the basis of their respective estimations. For instance, the first witness introduced by the plaintiff, states that the value of the plantation at the dissolution of the community, in the state in which it was at the time of the marriage, was $20,000 ; that said plantation was worth, with the improvements at the time of the dissolution of the marriage, $50,000 ; and that the clearing, fencing and ditching of the defendant's land was worth, for the front tract, between $25 and $30 per acre, and $15 per acre for the double concession, which is the difference between in the state in which it is now, and that in which it was at the time of marriage. On the other hand, from the testimony of the first witness introduced by the defendant, it is attempted to be shown that there is no difference between the value of the plantation in its condition at the time of the marriage, and that in which it was at the time of its dissolution ; and that, although the improvements are by him estimated from $5000 to $6000, the difference must be compensated by the quantity of wood that has been destroyed by the clearing. One of them goes even so far as to say that the property, without being cleared and without improvements, would be worth more than it really is at present with all its improvements. This shows the exaggeration into which the witnesses on both sides have fallen ; and the difference of opinions that must necessarily exist between persons who, though equally honest and competent to testify on such matters, adopt for their basis, a state of things which would best suit their interest or their views, if the property to be estimated was their own. The judge *a quo*, however, who had testified in the cause, and who had appraised the property at $16,400, according to its value in 1841, but in its condition in 1823, and at $47,000 with all the improvements at the time of the dissolution of the marriage, thought proper to cut the gordian knot by fixing the difference in value at $30,000,

as being the enhanced value given to the defendant's land, re-sulting from improvements placed upon it by the community; and in this we think he erred.

It is true, the evidence is so confused and so unsatisfactory, that there is the greatest difficulty, if not an impossibility, of ascertaining precisely the difference in value which the defend-ant's plantation may have acquired during the existence of the community, from the common labor, expense or industry of the spouses, between the time of the marriage and the period of its dissolution. We were aware that, under the rule by us es-tablished, the opinions of most of the witnesses would vary, as they would, perhaps, adopt for their basis, respectively, the relative worth of the property, with regard to their own wants or views, without considering the benefit which the defendant is to derive from it; but, on the other hand, we could not with any sense of justice, or with any propriety, recognize any right in the plaintiff to be compensated for the one half of the value of the increase or ameliorations, by subjecting the defendant to the payment of the one half of the estimation of the separate improvements, or of the cost thereof, for, as we said in our first decision, this would often be unjust, as the relative increase of the property might, in many instances, be very far from being adequate to the cost and expense which the ameliorations ori-ginally occasioned. Civil Code, art. 2377. In this emergency, the course which, in our equitable discretion, we have thought necessary to adopt, in order to come to a just and correct conclu-sion, and to put an end to this long litigation, is to take the tes-timony of every witness in consideration, notwithstanding their inconsistencies and exaggerations; to refer to and consult the evidence heretofore adduced on the former trials; to sum up the different estimates put on the property; to disregard the cost of clearing and ditching, which, as we have repeatedly said, can-not be *specially* allowed, but must be left to be accounted for in the general estimation of the plantation with its improvements or ameliorations, and to make an average of the different ap-praisements made by the witnesses on both sides; all which resulted in our ascertaining the value of the increase of the de-fendant's plantation, to amount to the sum of $15,513 50, one

half of which must be by him accounted for to the plaintiff. This conclusion appears to us proportionate to the real value of the property. It agrees substantially with the evidence of all the witnesses who have testified in the cause, on the different trials. It gives, in our opiniou, no advantage to either of the parties over the other; and is, it seems to us, a fair criterion by which their rights to the improvements ought to be settled.

It is, therefore, ordered and decreed, that the judgment of the Probate Court be annulled, and reversed; and that the plaintiff recover of the defendant the sum of seven thousand seven hundred and fifty-six dollars and seventy-five cents, being the one half of the enhanced value of the defendant's separate property, resulting from the improvements or ameliorations made thereon during the existence of the community. The costs below to be borne by the community, and those in this court to be paid by the plaintiff and appellee.

*Robertson* and *R. H. Chinn,* for the plaintiff.

*Brunot, Lobdell* and *Labauve,* for the appellant.