Simon, J.
The plaintiffs in this action, having previously obtained a judgment against Jean Francois Canonge, their former tutor, homologating the account of tutorship by him rendered, *387 and liquidating the amount due to them respectively, have instituted these -proceedings with a view of procuring the final settlement and liquidation of the estate, of Arnélie Mercier, deceased, wife of their said tutor, and of the community heretofore existing between them -, which settlement and liquidation, to be had between J. F. Canonge and the heirs of his deceased wife, is represented as necessary for the protection of the petitioners’rights and claims, under the judgment rendered in their favor, which, they allege, could not be satisfied out of any of the property belonging exclusively to the defendant, J. F. Canonge.
The defendant, J. F. Canonge, joined issue by stating his readiness and willingness to render an account of his administration of the succession of his late wife, which he administered as the natural tutor of his children, who, he says, are all of age, with the exception of one, and have accepted the said succession, purely and simply. And, after an intervention on the part of the said children, praying that a tutor ad hoc, might be appointed, to their minor brother; that their co-heirs, children of the first marriage of their mother with Amelung, might be made parties to the proceedings ; that an inventory and appraisement of all the property held in common between the parties, be ordered to be made ; and that their father be ordered to render an account of all the moneys and property of every description, whatever, received or retained by him, for the petitioners and their co-heirs, and of his administration of said property and funds ; and that a final partition in kind, be decreed and made of all the common property, as well as of the moneys, for which their said father may be liable or responsible towards them, <fcc., it was agreed by the counsel of all the parties, that the Judge of Probates should be requested to render a provisional decree, whereby the defendant, j. F. Canonge, should be directed to furnish said account within ten days. This decree was rendered accordingly ; and in compliance with it, the defendant, J. F. Canonge, produced and filed a long and detailed account of his administration, and of the situation of the affairs and property of the said succession and communi-nity, which was submitted for homologation to the Court ofProbates.
The plaintiffs, being creditors of Jean Franqois Canonge, in the sum of $26,731 35, by virtue of the judgment above mentioned. *388 and having by law, a lien and mortgage on all the immoveable property of their former tutor, and being, therefore, interested in the proceedings had between the heirs of Amélie Mercier, and her surviving husband, obtained leave to intervene in the said proceedings, and to make opposition to the aforesaid account of administration, alleging that the same is full of errors, and if homologated, every thing the accountant possesses, will be covered and absorbed by the claims of said heirs. They further state, that the credits of the community are vastly exaggerated, while its debts are represented as being far below the amount actually due at the time of its dissolution ; that shouldsaid account be homologated, the accountant would forcibly be brought into absolute insolvency, even in relation to his own children ; and proceeding to set forth the divers grounds of opposition upon which they rely, they pray that the account presented by J. F. Canonge, be amended according to the corrections by them pointed out; that the opposition he taken as the basis of the liquidation ; and that whatever amount may cometo the defendant from the said liquidation, be applied to the satisfaction of their judgment, &c.
The heirs of Dominique Bouligny, deceased, who had become in his lifetime the surety of J. F. Canonge, on the bond of tutorship by him furnished, also intervened, and joined Armand, and Alfred Mercier in their oppositions to the said account, and prayed accordingly.
Issue was joined on the oppositions ; and, after a full investigation of the matters in controversy arising from the various grounds alleged against the homologation of the account rendered by the defendant, a long and argumentative judgment Avas pronounced by the Judge, a quo, sustaining generally the said oppositions, amending the account accordingly, and liquidating the balance due to the heirs of Mrs. Canonge, (exclusive of the landed property inherited by their mother, and now in kind, and their recourse against the slave Uranie,) at tire sum of $28,992,39. From this judgment, the heirs of Mrs. Canonge, and the defendant and .accountant have appealed.
The appellants’ counsel have only called onr attention to the opinions expressed by the inferior court, on six of the seventeen *389 heads of opposition, as containing the errors complained of in the judgment appealed from; and as they present distinct and separate questions, the solution of which is necessary to arrive at a proper and final settlement of the rights of the parties, we shall proceed to examine them in the order adopted by both counsel, in their oral and written arguments.
I. This grows out of the second ground of opposition, which bears on three items of the account, representing the hereditary portion of Mrs. Cauonge, to wit, nineteen feet of ground, valued at $12,666 ; ten feet of ground, valued at $5000; and the slave named Uranie, valued at $1100. This property was inherited by the deceased from her father’s estate, and was allotted to her in the partition thereof. It appears, that the two lots of ground have never been sold or alienated, and exist in kind; but the slave Uranie was sold by the surviving husband for a less price than the amount of her appraisement, at the time of the partition of Mercier’s estate. The Judge, a quo, was of opinion that the lots of ground should not be made to figure in-the account at any price, at all; and that the slave, having passed with a vicious title into the hands of the purchaser, she not being the property of the seller, the parties in interest should be left to their recourse for the recovery of the slave, if they think proper to exercise it.
We think the Judge, a quo, did not err. The owners of the lots of ground, and of the slave Uranie, figuring in the account under their original appraised value, are exercising their rights in this action contradictorily with parties whose rights and pretensions are conflicting with theirs, aud they cannot, therefore, obtain any undue or illegal advantage, which would turn to the prejudice of their opponents’ claims. Now it appears, that the lots exist in kind, but that they have been largely built upon ; and it is said, that they are so mixed up with other lots, that it will be very difficult, if not impracticable, to separate them, or to make a correct relative estimation of their value; and this is given as a good and valid reason why the accountant should beep them for his own account, at their estimated value. We think otherwise. It is a well established rule, that in the settlement of a community between the spouses or their heirs, the property brought in marriage, or acquired during marriage by either of them, and which exists in *390 kind at its dissolution, must be withdrawn by the owner thereof, in the condition in which it may be at the time of the dissolution ; if it consist in lands built upon, or improved during the marriage, the owner of the soil has a right to keep the improvements, on accounting to the other for one-half of the enhanced value of the property. Civ. Code, art. 2377. Babin v. Nolan, 4 Rob. 278. 6 Ib. 508. 10 Ib. 373. But it cannot be pretended, that he should have the right of abandoning the soil to the other spouse or to the community, and of claiming in its place, the amount of its original estimated value. This would often be unjust, as the property may be greatly depreciated ; and as the value of the soil so fixed, might perhaps oftentimes be higher than the actual estimation of the whole property with the improvements. The appellants must take the property in kind, and cannot be entitled to charge their father with the amount of an estimation which might perhaps prejudice the rights of others.
With regard to the slave Uranie, it is not pretended that she was sold by the defendant during the marriage. She was alienated by him during the tutorship, and was the property of the children and heirs of his deceased wife. If the slave had not been sold, the appellants would have found her as a part of their estate, and would have taken her in the state of depreciation in whieh she must necessarily be, after a great number of years; and it seems, therefore, unjust to allow them an amount which they could not get for her, if she was to be sold, it may be hard for them to be under the necessity of repudiating the sale made by their father; but as third persons are interested, they cannot be permitted, by their ratification o f his illegal act, to lessen the security which others have acquired.
II. This relates to the sixth ground of opposition, which complains of the charge of $3000, contained in the account rendered, as being the amount of stock held by the community in the Bank of Louisiana. It appears, that after its dissolution, the tutor borrowed $2700 from the bank for his private use, on the pledge of the stock. We agree with the Judge, a quo, that the stock remained the property of the community, and that the accountant should be charged only with the amount of the loan, as being the only sum from which he benefitted in the alienation of the stock. *391 This amount appears to have been allowed in the judgment appealed from, as it is included among the different sums forming the aggregate of $36,490, substituted by the Judge, a quo, to that of $45,090, as the amount of property and effects disposed of by the accountant since the dissolution of the community.
III. This item, -which forms the seventh ground of opposition, has been the subject of much discussion in the arguments in this cause ; and we are free to confess, that we have not found the conclusion which we have ultimately adopted, free from serious difficulties, although we feel confident that, under the circumstances of the case, it is perfectly concordant with the principles of equity and moral justice, which ought to govern the conflicting rights of the parties. It relates to a charge of $10,000, carried in the account rendered to the credit of the community, as being the value of ten shares in the Orleans Insurance Company, and given by the tutor in payment of his individual debt to the Louisiana State Bank. Our first impression was, that the opinion of the Judge, a quo, allowing only $3500, as the real value of the stock, at the time the dation eti payement was executed, was erroneous, and that the whole amount of said stock should be accounted for by the defendant; but, after further deliberation, it has appeared to us, that our first view of the question could not be maintained, without operating unjustly on the rights of those who may be interested in establishing the real value of said stock, not only at the time of its alienation by the accountant, but also at any subsequent period thereafter, in order to show that the price paid for it, was rather the result of the circumstances under which the sale was made, than a true standard by which its real value could be ascertained.
At the dissolution of the community, only $1000 had been paid on account of this stock, and there remained $9000 to be paid subsequently ; no funds were received or disbursed by the accountant, and the balance due was made up of the profits realized on the stock in different years, and placed .to the credit of the stockholders on the books of the company. In 1841, an amicable arrangement was made between the defendant and the Louisiana State Bank, to which he owed a sum of $17,922, the amount of several promissory notes, secured by pledge on the stock in *392 question, and that of the Levee Cotton. Press Company, by which said stock was transferred in payment of his notes ; and a witness, who was acting as the counsel of the Bank in this transaction, and in the collection of the notes, states in his testimony, that having been applied to by Canonge to propose to the Bank to take the stock in payment of his debt, he. the witness, from the information he had at the tim,e of the real value of said stock, recommended the Bank to take the same inpayment, inasmuch as he considered Mr. Canonge unable to pay otherwise at the time, tie further states that, in 1842, two shares of the same stock were sold at $300 per share; that it rose in value for several months afterwards, token it fell again after the fire that destroyed the lower cotton press; and that, in advisitig the dation en payment, he took into consideration the pecuniary embarrassments of Mr. Canonge; otherwise, he considered the stock, if sold at that time, was not worth the amount due, &c. It is also admitted in the record, that the stock in question, in 1841, was worth, and could only sell for $300 per share.
Under this evidence, we think the Judge, a quo, did not err. The proof is conclusive that, in 1841, the stock was not worth the amount paid for it; that its real value did not extend beyond the amount allowed in the judgment appealed from ; and that if it was disposed of by the tutor at a par value in discharge of his individual obligations, this was occasioned by the circumstances attending the collection of the debt he owed to the Bank, and in payment of which the stock was received. The appellants, who have not disputed the sale made by the defendant have not attempted to show that said stock has ever commanded a higher value in the market since the transfer thereof was made ; and, for aught we know, had they thought proper to inquire into its actual value at the time of the rendition of the account, it might, perhaps, have been found that it was then under a greater depreciation than at the time of its alienation. Be this as it may, it was the duty of the appellants to show it, in order to establish that they had suffered a real loss from the act of their tutor, which, ou the contrary, they seem to ratify; and as, from the purport of art. 333 of the Civil Code, the tutor is only bound to return to the minor the estimated value of those moveables *393 which he cannot restore in kind, we are of opinion that, not' withstanding the defendant has been benefitted, under the extraordinary circumstances of the transfer, to the whole amount of the stock, the appellants are only entitled to recover its real value, such as it has been shown, and is admitted to hare been, at the time it was alienated.
1Y. This grows out of the eleventh ground of opposition. It has reference to a charge of $9680, which, owing to an error of calculation in the account, was reduced by the Judge, a quo, to the sum of $8700. This charge is the result of dividends accrued from the stock held in community in the Louisiana Bank, and the Louisiana State Bank, received by the tutor since the death of his wife, and was properly placed to the credit of the community. We concur also, with the inferior Judge, as to the interest paid on the debts of the community, which, we think, were properly charged on th e debit side of the account thereof, and this is even admitted by the appellants’ counsel.
Y. Yl. The issues presented by the thirteenth, sixteenth, and seventeenth heads of opposition, are so closely connected, that we have thought it more adviseable to consider them together, so as to come more properly to the solution of the main question growing out of the sixteenth, and which must necessarily cover the others. It is this : the opponents contend, that the defendant should have credited himself with the expenditures incurred since the dissolution of the community, for the maintenance and education of his children; and they say,that such expenses, being not less than $600 a year for each of them, have far exceeded any amount of interest or of income which they might be entitled to, by reason of their interest in the succession of their mother. 'Phis opposition was sustained by the inferior Judge, who, in his judgment, proceeded to ascertain from the evidence the amount of the expenses incurred for the maintenance and education of the children of the deceased, and whether said amount was sufficient to absorb all the revenue proceeding from the property by them inherited ; and he came to the conclusion, that those expenses, having exceeded their income by one or two hundred dollars annually, the heirs were not entitled to recover any part thereof, either from the hire of the slaves, from the rents of the property of the *394 succession, or from the interest that might have accrued to them from the time of the dissolution of the marriage, upon the amount of that portion of the dotal and paraphernal property of the deceased, which was disposed of by the husband during the existence of the community.
We are satisfied from the evidence, that the annual expenses of the children of J. F. Canonge, most of whom received their education in France, must have amounted to between $500 and $600 a year. Nay, the record contains an admission, not only that since their return from France, all the children of J. F. Canonge have lived on the common stock, but that the annual expenses for each of them can fairly be set down at from $500 to $600 a year. Hence, the question occurs ; Can the appellants have the benefit of the revenues proceeding from the property by them inherited and administered by their father as their tutor, without being bound to compensate therewith the amount of the expenses incurred by their maintenance and education ?
When this question was first presented to our consideration, on the submission of this cause without argument, we were impressed with the idea, that parents were legally permitted to abstain from claiming from their children the reimbursement of the expenses necessitated by the fulfilling of that sacred duty which they owe to their offspring, to wit, that of supporting and educating them, or from taking such expenses out of the latters’ ■revenue. But here, third persons who have conflicting rights to exercise contradictorily with the appellants, are interested in its solution strictly according to law; and, after a thorough and attentive reconsideration of the proposition as it was originally insisted on by the appellants’ eounsel with much force and plausibility, we have been prompted to recognize its inapplicability to this case, and to come to a different result.
It is worthy of remark that, from the state of the affairs of the community at the time of its dissolution, there was but little, if any thing, to be expected from its liquidation, in favor of the heirs of the defendant’s deceased wife. Thus, it is obvious, that the appellants, whose rights to the property of the said community were eventual, and who could not set up any pretensions thereto until after the payment of its debts, and its complete liquidation, were left to their own resources, as derived from the estate of *395 their mother, which had come under the administration of the defendant, as their tutor. The latter had no property of his own, and, for aught that appears, he was entirely destitute of any tangible means of providing for the support and education of his children, except so far as they might proceed from the administration of the tutorship, or from that of the community, which though dissolved by the death of the defendant^ wife, remained for a series of years, unsettled and , unliquidated.
Now, it is true, that, under art. 24.3, of the Civil Code, fathers and mothers, by the very act of marrying, contract together the obligation of supporting, maintaining, and educating their children ; that they have, during marriage, the enjoyment of the estates of their children, until their majority or emancipation, (Civ. Code, art. 239,) and that the obligations resulting from said enjoyment are, among others, to support and educate their children according to their situation in life. Civ. Code, art. 240. But the administration and enjoyment of the estate of his minor children, is given to the father, during the marriage only. Civ. Gode, art. 267. After its dissolution he becomes their natural tutor, and keeps the administration of their property as such, subject to the duties, responsibilities, and obligations prescribed by law with regard to all other tutors. Civ. Code, art. 268. As suck, he is bound to account for the revenues of the property of his pupils, subject to the expenses of their education, according to their means and condition in life. 10 La. 98. Their expenses must be regulated according to their condition and their fortune, and ought never to exceed their revenues ; and, in case of insufficiency of the latter for procuring their education or subsistence, nothing can be taken from the capital of their estate, unless the tutor is authorized to do so by the advice of a family meeting. Civ. Code, art. 343. Thus, it is clear, that the revenues of minors, under the natural tutorship of their father, must be applied to defraying the expenses occasioned by their maintenance and education; that the law makes no distinction as to the kind of tutorship under which their estates are administered ; that the alimony due by ascendants to their descendants who are in needy circumstances, -is only required and granted in proportion to the wants of the person requiring it, and the fortune *396 of those who owe it; (Civ. Code, arts. 245, 246, 247 ;) and that when children have property from which a sufficient income may be derived to provide for their subsistence and education, the natural obligation of their father ceases, after the dissolution of the marriage ; and that then their expenses ought to be provided for out of the revenues of their property, pro tanto at least, if insufficient. This doctrine is also fully developed by Pothier, Contrat de Mariage, Nos. 384, 390. Merlin, Repertoire de Jurisprudence, verbo, Aliment. Toullier, vol. 2, p.293. Duranton, vol. 2. p. 387. Favard de Langlade, vol. 1, p. 151; and has been sanctioned by the Court of Cassation in France, in a decision reported by Sirey, vol. 13, partie 1, p. 457, in which its opinion is expressed thus: “ Attendu qu’il est de principe na-turel et civil que tant que le mineur n'a pas de revenus pour subvenir aux frais de sa nourriture, entretien et education, le pere doit y pourvoir; néanmoins cette deite de paternite cesse lorsque les revenus du mineur augmentent d'une m,aniere suf-fisante." Here, the appellants’ revenues were absorbed by their expenses, and we must conclude that the Judge, a quo, decided correctly in excluding them from the account rendered by the defendant. Indeed, the latter himself recognizes in his account, to a certain extent, that his children are not entitled to recover them, when he says, in relation to the revenue derived from the other property of the community, after the item of bank dividends : “ Le reste des- revenus a dü étre absorbe par les dé-penses et les charges de la communauté." It ought to be so with regard to all the revenue, which, from the evidence, was clearly insufficient.
As the appellees have not prayed that the judgment appealed from be amended in any respect, we have been precluded from examining any other ground of opposition. It suffices to say, that those which have been brought to our notice by the appellants, were correctly sustained; and, upon the whole, we think, that, so far as it goes, the liquidation of the appellants’ rights and of the community, has been fairly and justly made, and that the account rendered with its amendments has been properly approved and homologated; leaving, however, for further adjustment and liquidation, the proceeds of the other com *397 munity property, if any there be, which may exist in kind, and which may be hereafter the subject of a final settlement between the parties according to their rights thereto.
Soule, for the plaintiffs.
A- Canonge and Roselius, for .the appellants.
Grima, for the heirs of Dominique Bouligny.

Judgment affirmed

*

 Roselius, prayed for a re-hearing in this case, contending, that though the transfer of stock by the tutor in payment of his individual debts was unauthorized and the minors not bound by the alienation, they had a right to ratify and profit by the transaction, if they thought proper to do so ; and that the creditors of the surviving husband cannot compel him to charge his minor children with the expenses of their support and education.
Rehearing refused,